Frank E. Johnson, Official Beferee.
Testimony has been taken under the order to hear and determine the plaintiff’s application for an increase in alimony.
The divorce judgment obtained by her against defendant about 17 years ago, on default, fixed alimony at $17 a week, ydlich probably was a fair reflection of his then ability to pay.
*227 He thereafter, without permission from this court, married his present wife, but in Connecticut; he has since the time of the divorce been much more successful in business than in 1941, In 1957 the “ return ” that he and his wife made shows a gross income, salary and bonus from a corporation of which he owns two thirds of the stock of $46,640. He did not claim, on the stand, that his 1958 salary was reduced. He listed therein his 3957 matrimonial expenses, including two items, that must be considered, namely, “ entertainment $5,000 ” and “ promotions $900.”
The first item (in this personal return) is apparently unrelated to the corporation; what the $900 was for is not clear, but he credited himself with that deductible item in that return. During 1957 the company gave him $70 a week for “ business spending,” to help the company’s business, but he testified he spent $15,000 and that the difference (about $12,500) was out of his own pocket and has not been repaid.
The accountant who kept the company records, and drew that 1957 company report, testified, but no sensible explanation was offered about why a company that could afford to pay defendant a large salary and bonus for 1957 did not reimburse him for that $12,500 if it was spent for the purpose of enlarging the company’s clientele and improving its business.
It could have been included in the company’s 1957 report as a natural and proper expense of business; there was no attempt made at the hearing to itemize it, and it may be that (if it was spent) it could not be justified or explained; no attempt was made to deduct it in the corporate 1957 report. Likewise, at the hearing, no attempt was made to detail it if it was a proper or deductible use of his personal funds. It, therefore, must be ignored in figuring Ms ’57 income; in the year when the “ recession ” began, nevertheless, he received the 1957 bonus.
The living expenses of one who has been divorced and remarried have not been recognized as a “ change in circumstances,” or a legitimate excuse for not paying what should be paid to the former wife; it is probably even less permissible of consideration when he ignores the Supreme Court and remarries without its knowledge or consent. The decisions indicate that the control this court desires to have over a remarriage by a defendant husband relates to its possible effect upon his financial obligations under the judgment. Those obligations are to pay plaintiff (during the life of the judgment) a proper sum as a continuing obligation. He has voluntarily enlarged the payments to plaintiff over the years, but not paid a sum commensurate with his increased income. She was not *228 shown to have substantial assets, has no income, and obviously is not qualified to earn any; her general appearance on the stand did not indicate that she is able to work or has been able to save any money out of any of the past alimony.
If he is living on a scale where $5,000 a year is spent for entertainment by himself and his wife, it is a fair indication of of his net income; apparently he can afford to contribute $12,500 to this company (of which he is not sole owner) which has been selling Cadillacs.
Alimony must be fixed, under the decisions, after considering the financial situation of each party. This means the wife’s receipts must go down when his do; it would seem that they should increase proportionately when he is well able to pay more. It is thus apparently implied that his situation will be just as important on the increase as it would be if there had to be a decrease. The amount should also be fixed with two other considerations in mind: the income tax plaintiff must annually pay thereon, and the tax credit deduction defendant may annually use in his future returns.
The $17 was fixed on the basis of his 1941 capacity to pay, that same method of computation should be used now; the percentage of his income that she received at $17 a week is a factor in deciding the percentage of his income that she now should have, regardless of the fact that she has been trained, by necessity, to live on less. If her past acquaintance with relative poverty has taught her to get along on little, should she be refused an increase worth talking about, since she has proven that she did live on less than she is now getting? The answer seems to be in the negative.
The neighborhood she lives in, the non-elevator apartment building in which her apartment is located, her stair-climbing problem, and the picture of her financial life, past and present, would indicate that she has been meeting the rising cost of living by the same economy that she was compelled to use early in the past.
There is no case cited in the defendant’s brief that indicates that she shall continue to receive what is barely enough, even though her husband is regularly receiving what is abundantly more than he needs. In the absence of any such decisions, and applying what seems to be the principle reiterated in the Phillips case (infra), she ought to share his success as she would be compelled to share his failure when he earned less.
Under all the circumstances, his cost of family life in another State, in addition to the apartment he maintains in Brooklyn, can hardly be considered, especially since he is deemed to have *229 married again with the knowledge that his rise in fortune, if there be one, would authorize the Supreme Court to have her keep step with him, just as she would have to do if his fortune declined.
Accordingly, there ought not to be any solicitude on the part of the court in saving money for him by keeping her payments down to the point where there would be no surplus; while the $300 a week for which she asks may seem like a fortune to her, the present upward climb of prices in everything that touches her, and income taxes, would soon reduce it to a more reasonable basis.
She is elderly, visibly not in good health, and bears the appearance of having learned economy the hard way. The mere fact that she has forborne to demand in the past (which includes many defaulted payments, as shown in the file) what was her right should not stand in the way of a presently adequate award. The weekly payment is fixed at $200, which goes back to the date of application for increase (Harris v. Harris, infra).
The question of counsel fee presents a problem. The capacity of the husband to pay, the amount litigated (a sizeable award, including her life expectancy) and whatever obstructive legal difficulties she encountered in her efforts, ought to be considered; there is a somewhat loose rule of computing counsel fees in multiples of the alimony.
The hearing herein has been long delayed by the apparently useless appeal by defendant from the order granting a necessary examination before trial; it was allowed below and unanimously affirmed. (5 AD 2d 839.) That extra work is not claimed to have been the subject of a previous award for counsel fee. Under those circumstances counsel fee is fixed at $3,000.
The principles applied herein seem to be those recognized in Parker v. Parker (189 App. Div. 603) where on an income of $7,000 the defendant was ordered to increase to $2,860 (40% of his income); Goldberg v. Goldberg (265 App. Div. 946) refusing to consider defendant’s medical expenses for second wife whom he married without permission: Raynor v. Raynor (279 App. Div. 670) denying relief to a defendant who remarried without permission; Baxter v. Baxter (256 App. Div. 892) refusing to help defendant who married without permission; Harris v. Harris (259 N. Y. 334, 335) where plaintiff applied seven years after the decree for an increase in alimony, ‘ ‘ The husband having inherited a large sum of money,” and was successful: the net income was $14,889.90 and the $3,000 (20%) awarded by the referee and approved by the Special Term was affirmed; Fein v. Fein (136 N. Y. S. 2d 250) citing some of these decisions and *230 refusing to consider the case of his second marriage household because he did not obtain permission; Pitre v. Pitre (108 N. Y. S. 2d 618) discussing the importance of obtaining permission; Phillips v. Phillips (1 A D 2d 393) which requires that the financial situation of both parties be “considered”; Faye v. Faye (131 Misc. 388, 389) citing authority that “ the fortune of of the husband ” is a factor in fixing alimony; and Goetz v. Goetz (217 App. Div. 31) where $8,000 was allowed on a $12,000 income.
Settle order.