Hugh R. Elwyn, J.
In this proceeding, initiated in the State of California under the Uniform Eeciprocal Enforcement of Support Act of California (California Code of Civil Procedure, §§ 1650-1690), the petitioner, the County of Santa Clara, seeks a judgment against respondent ordering him to pay the sum of $3,256 as reimbursement for expenditures for the support of the respondent’s dependents, and the petitioner, Dolly Claretta Hughes, asks that the respondent, styled the defendant in the California proceeding, be ordered to pay the sum of $100 per month for the support of two minor children who are in the wife’s custody in the State of California.
At the hearing the respondent controverted the petition and entered a verified denial of those allegations of the petition, wherein it was alleged that the dependents named in the petition were entitled to support from the defendant, and that since about September 25, 1962 he had failed to provide fair and reasonable support for his dependents according to his means and earning capacity. In addition, the respondent pleaded a number of defenses which require some discussion.
Thereupon, the court, in accordance with the provisions of subdivision 6 of section 37 of the Domestic Eelations Law, stayed all proceedings and a transcript of the Clerk’s minutes showing the denials were transmitted to the court in the initiating State for the taking of the petitioner’s testimony. From this testimony, which has been forwarded to this court, it appears that the parties were married in the City of Kingston, New York, on January 6, 1958. Following the birth of two children, the wife left the husband and removed with the two children to the State of California. Thereafter, and on October 15, 1963, the wife procured in the courts of the State of California a decree of divorce on the grounds of extreme cruelty and was awarded custody of the children without, however, obtaining any provision for the support of either herself or the children. The mother has since remarried and is now living with her present husband in California.
In justification for his failure to provide support for his two children, the respondent has pleaded the following facts which are supported by his testimony. It appears that prior to May 7, 1960 the respondent and his wife and two children, age two and six months, resided in the City of Kingston, New York. Prior to the parties’ marriage, the petitioner had resided with a family by the name of Buttle, who were of the Mormon faith. Mr. Buttle and his wife objected to the petitioner’s marriage and tried to discourage it, but to no avail. In spite of the objections of the Buttle family, the petitioner and the *561 respondent were married and two children were born in the marriage.
After the marriage, Mr. Buttle and other Mormon church officials constantly pressed their influence on the couple and in various ways attempted to induce the respondent and his wife to follow Mormon ways and to become members of the Mormon church. In spite of the respondent’s disinterest in Mormonism, which he made plain to Mr. Buttle, the latter, along with other officials of the Mormon church, would frequently visit at the respondent’s home where they would show movies and slides on Mormonism for the purpose of proselytizing the respondent and his family. Finally, the persistent efforts of Mr. Buttle and his friends to convert the respondent and his wife to the Mormon faith became so offensive to the respondent that he forbade Buttle and his friends to visit his home anymore.
Shortly afterward, on the 7th of May, 1960, the respondent went to work as usual, but when he returned home that evening, he found that his home had been emptied of all its furniture and furnishings, and his wife and children were gone. To all intents and purposes, his wife and children had vanished without a trace, for although the respondent made diligent efforts to locate his wife and children through the police, various State and local officials and his own attorneys, he was unable for many months to learn their whereabouts, and he has never seen nor heard from his wife and children since their sudden and mysterious disappearance over four years ago. Only after -many months of diligent inquiry and investigation did the respondent learn that his wife and children, in company with Mr. Buttle and other persons of the Mormon faith, had removed to San Jose, California, whence Mr. Buttle had been transferred by his company. The actions and conduct of his wife in willfully and deliberately depriving him of his natural rights as a parent is, the respondent contends, contrary to the public policy of the State of New York and, consequently, her petition for support of the children, which she removed the breadth of the continent, should not be entertained.
Thus, there is squarely presented the question, whether the wife’s abandonment of her home and marriage, with no apparent justifiable excuse, and the surreptitious removal of her two infant children to a distant State without the husband’s knowledge or consent, absolves the husband from the obligation which the law places upon him as a father to support his minor children.
That the respondent has been unfairly, not to say shabbily, dealt with by the wife, there can be no doubt. For a long time *562 he had no knowledge at all of his children’s whereabouts and all his efforts to locate them proved fruitless. His fears and anxiety for their safety may be readily imagined. The wife’s heartless treatment of the husband by not only abandoning him, but in spiriting away his children, and then keeping their whereabouts a complete secret to the extent that to this day there has been no communication by the wife with the husband concerning the children or their welfare, can be neither justified nor condoned. If the wife were seeking support for herself, there would be no question that by her abandonment of her husband she has forfeited all right to his support. Further, having obtained a divorce in the California courts, she would be estopped under the doctrine of Krause v. Krause (282 N. Y. 355); see, also, Ross v. Ross (206 Misc. 1073). The question is, however, whether a wife by any conduct on her part, even though it result, for all practical purposes, in a total deprivation of the husband’s parental rights, can forfeit her children’s legal right to support from their father.
Although the court feels a great sympathy for a father, who through no fault of his own, has been shorn of the rights and joys of parenthood, the law seems to be well established (1) that “ a husband [is] absolutely responsible in keeping with his ability for the support of his dependent minor children” (Landes v. Landes, 1 N Y 2d 358, 365; Social Welfare Law, § 101; Family Ct. Act, § 413); (2) “that neither a divorce or a remarriage, nor the fact that the mother has legal custody of the child or children, terminates that liability ’ ’ (Landes v. Landes, supra, p. 365, citing Laumeier v. Laumeier, 237 N. Y. 357, 364) and (3) that “this may be enforced regardless of residence ” (Landes v. Landes, supra, p. 365, citing Adams v. Adams, 272 App. Div. 29, 30; Domestic Relations Law, § 34, subd. 1).
Moreover, ‘ ‘ The duty to support and the right to custody are not coextensive, nor does the obligation of the one necessarily depend upon the enforcement of the other ” (Aberlin v. Aberlin, 3 A D 2d 417, 421). In “ Almandares ” v. “ Almandares ” (186 Misc. 667) as in this case, a mother and child had suddenly disappeared and the respondent had no knowledge of their whereabouts until he received notice of an order of publication in a divorce which the mother had instituted in the State of Florida. The court reasoned that it would be inconsistent with the analogous principles that a minor child is not bound by a sister State constructive service default divorce procured by its parent, nor by the financial provisions of a foreign divorce decree to penalize the child for the acts of the mother, especially since her removal *563 was not in violation of any court mandate and concluded by saying : “ In any event, the weight of authority is that when the custodian has a bona fide reason for removing the child to another State and that course is consistent with the child’s welfare, such removal will be permitted, and not constitute an excuse for withholding support, notwithstanding that it makes more difficult the father’s visitation (Altschuler v. Altschuler, 248 App. Div. 768, supra; Nash v. Nash, 236 App. Div. 89, affd. 261 N. Y. 579, supra; Duncan v. Duncan, 293 Ky. 762, Note, 154 A. L. R. 552; Kane v. Kane, 241 Mich. 96; Urkle v. Urkle, 202 Ind. 129; Schneider v. Schneider, 207 Iowa 189) ”. (“ Almandares ” v. “ Almandares ”, supra, p. 674.)
The sufficiency of the same defense as the respondent raises here was considered and held to be insufficient in this type of proceeding in the case of Matter of Meyers v. Meyers (29 Misc 2d 163) where the court said (p. 165): “ The mother has no doubt deprived the father of any substantial power of visitation. This, as shown by the cases relied upon by the appellant, might induce the court to refuse to punish the husband for contempt in failing to comply with an order for the payment of alimony in a matrimonial action; or it might deprive a wife of the right to enforce monetary provisions of a separation agreement. It does not, however, constitute a defense in a proceeding under the Uniform Support of Dependents Law, a basic assumption of which is that a father is responsible for the support of his dependent children regardless of the acts of the mother. (Aberlin v. Aberlin, 3 A D 2d 417, appeal dismissed 3 N Y 2d 934; Goodman v. Goodman, 17 Misc 2d 712.) ”
The result may appear to be harsh to a father caught in such circumstances, but if he objects to his wife’s custody of his children, he has his legal remedy to test that custody by way of a habeas corpus proceeding. That the remedy may have to be pursued in the courts of a far distant State is not a sufficient reason for injecting the custody issue into this proceeding. As was pointed out by the court in Aberlin v. Aberlin (supra, p. 421): “ Proceedings for the support of a child should not be frustrated by endless dispute over what is essentially a collateral problem, namely, in whose custody does the child rightfully belong. The proceedings under the Uniform Support of Dependents Law are salutary in purpose, and are designed to be summary and direct. They do not provide a suitable forum to try out or determine issues more properly handled in a plenary action, or by way of appeal from or modification of existing judgments, or in habeas corpus proceedings. This is not to say that such issues may not become inextricably involved in a *564 support proceeding, but when and if they do, they must not be permitted to defeat the primary and summary purpose of the proceeding ’ ’.
Thus, although the wife’s conduct in spiriting the children away to a far distant State and thereby depriving her husband of all practical visitation rights may arouse much sympathy for the husband, he is not thereby absolved from responsibility for his children’s support, for the law does not hinge the father’s liability for the support of his minor children upon an appraisal of the circumstances under which the wife obtained their custody.
The other defenses, which the respondent has interposed in this proceeding, may, with the exception of that interposed to the petition of the County of Santa Clara, be disposed of summarily. For his first defense, the respondent contends that the Uniform Eeciprocal Enforcement Act of the State of California is not entitled to be enforced in the State of New York for the reason that it is not similar to the Uniform Support of Dependents Law of the State of New York (Domestic Delations Law, art. 3-A) in that many of the provisions of the California act are dissimilar to and grant greater powers than those authorized by the New York law. This defense is without merit. Proceedings to enforce support under the Uniform Support of Dependents Law are not violative of any of the respondent’s constitutional rights (Landes v. Landes, 207 Misc. 460, affd. 1 A D 2d 772, affd. 1 N Y 2d 358, app. dsmd. 352 U. S. 948; see, also, Harmon v. Harmon, 160 Cal. App. 2d 47) and the acts of California and New York are sufficiently similar to be enforcible (“Hodges ” v. “Hodges ”, 202 Misc. 71; Ross v. Ross, 206 Misc. 1073, 1075, supra). For his second defense, the respondent asserts that the Family Court is without power to order the respondent to reimburse the County of Santa Clara, one of the petitioners in this proceeding, for expenditures allegedly made for the support of his dependents. This appears to be so, for, although section 1683 of the California Code of Civil Procedure provides that: “If the court of the responding state finds a duty of support, it may order the defendant to furnish support or reimbursement therefor and subject the property of the defendant to such order ” (italics supplied), there is no similar provision authorizing the court to order reimbursement to the State, county or a Public Welfare Department to be found in the New York statute Domestic Delations Law (art. 3-A).
Although reciprocity was intended to be established between those States enacting the Uniform Eeciprocal Enforcement of Support Act, the New York statute, known as the Uniform Sup *565 port of Dependents Law, is entitled somewhat differently and although essentially the same in purpose as the Uniform Reciprocal Enforcement of Support Act, it does contain many differences of phraseology and of procedural detail. This court, which has been given exclusive original jurisdiction over proceedings brought under the Uniform Support of Dependents Law, is of course, governed by the New York, rather than the California, statute.
In searching the New York statute for authority to order the respondent to make reimbursement to the County of Santa Clara for moneys expended for the support of the respondent’s dependents, I have not overlooked section 36 of the Domestic Relations Law which grants to the State, or a political subdivision, or any official agency thereof which is furnishing support, or is likely to furnish support, to a dependent the same right to invoke the provisions of this article as the dependent to whom the duty of support is owed. However, nowhere in the New York statute is the word “ reimbursement ” used and there is no specific authorization anywhere for the court to require the respondent to reimburse a public welfare agency for moneys spent for the support of his dependents. Whatever rights the State or any of its political subdivisions have under the act, they are the same as the rights of the dependent to whom the duty of support is owed (Domestic Relations Law, § 36). These rights are limited to securing from the court “ an order directing the respondent to furnish support to the petitioner and to pay therefor such sum as the court shall determine, having due regard to the parties’ means and circumstances ”. (Domestic Relations Law, § 37, subd. 11.) That the words, “ to furnish support ” and “ to pay therefor” are used prospectively and are not intended to authorize reimbursement for past expenditures is evident from the language of the succeeding subdivisions of section 37 of the Domestic Relations Law and particularly subdivision 12 which gives the court power to direct the respondent to make the payments required thereby at specified intervals to the Probation Department. All of the language of the New York statute connotes futurity, rather than redress for past derelictions or wrongs.
Even if such power to order the respondent to make reimbursement to another State which had furnished support to his dependents could be found in the New York statute, the enforcement of such an order through contempt proceedings would be largely ineffectual in most cases. A willful failure to comply with the court’s order might be punished as a contempt, but *566 certainly an inability of a respondent to comply with such an order because of lack of means is not contempt. For the court to direct the issuance of an order which it knows is beyond the ability of the respondent to comply with would be an abuse of the court’s power. The failure of the respondent to comply with such an order would not constitute contempt. The court will not do a vain thing.
Moreover, there is no power in the Family Court to render a money judgment against the respondent for moneys expended by others for the support of his dependents. The County of Santa Clara may have a cause of action at law to recover moneys spent for the support of the respondent’s dependents, but if so, the remedy must be pursued in a court other than the Family Court. For lack of jurisdiction to grant the relief sought, the application of the County of Santa Clara for judgment ordering the respondent to reimburse it for the $3,256 alleged to have been spent by it for the support of the respondent’s.dependents must be denied.
For his third defense, the respondent asserts lack of power in the Family Court to award the County of Santa Clara the costs of the proceeding. There is no authority in the New York statute for an award of costs of the proceeding against the respondent, and, accordingly, this request of the County of Santa Clara must likewise be denied.
The alleged invalidity of the petitioner’s California divorce is of no consequence so far as the respondent’s liability for the support of his children is concerned (Laumeier v. Laumeier, 237 N. Y. 357, supra) and since the decree did not provide support for either the petitioner or her children, it has no bearing upon the County of Santa Clara’s claim to reimbursement for support furnished to the wife and children.
The defense of laches, likewise, has no merit since no delay on the part of the wife in asserting their rights can prejudice the children’s rights to their father’s support.
Subsequent to the wife obtaining a divorce in the California courts, the respondent remarried and two children have been born of this second marriage. The respondent is in partnership with his father in the construction business and has a take-home pay of approximately $75 per week. His gross earnings for the year 1963 were approximately $3,100. He has no other, source of income and no other resources. The petitioner is seeking support for her children in the amount of $100 per month, which, although reasonable in amount considering the probable needs of the dependents, is excessive in light of this respondent’s means and circumstances for which the court must have due *567 regard (Domestic Relations Law, § 37, subd. 11; Family Ct. Act, § 413).
Moreover, in determining the amount the respondent shall be required to pay for the support of his minor children, the court cannot ignore the additional responsibilities which have come to the respondent as a result of his second marriage. In my judgment the respondent’s obligations toward those dependent upon him for support can be placed in proper perspective only if they are viewed as a whole. I am in accord with the views expressed by the court in “ Werner ” v. “ Werner ” (204 Misc. 1085, 1089) where the court said: ‘ ‘ There are authorities to the effect that a father’s remarriage should not affect adversely the support rights of the issue of the first marriage (cf. Phillipi v. Phillipi, 148 Fla. 393) and that such children are in a sense first mortgagees of the father’s earnings or other resources. However, the better view appears to be that the court should look at the entire situation as it exists, and predicate every support order on the theory that all parties entitled to support should receive awards in fair proportions in the light of the particular circumstances (cf. Krause v. Krause, 282 N. Y. 355) ”.
‘ ‘ Having due regard to the parties ’ means and circumstances ’ ’ (Domestic Relations Law, § 37, subd. 11) and looking at the entire situation, I find that the minor children named in the petition are entitled to support from the respondent and direct the entry of an order requiring the respondent to contribute the sum of $50 per month for their support, commencing August 1, 1964.