Stanley Gabtenstein, J.
A classic pattern of shifting marital and parent-child relationships in these days of unstable marriages, quick divorces, immediate remarriages and increasing emancipation of the respective sexes emerges from the testimony before the court on this support matter. Because these facts appear to be increasingly common and differing sociological philosophies underlie some of the landmark cases, a backward and forward perspective seems in order.
Petitioner, the former wife, moves for an order enforcing a foreign divorce decree. Respondent, the former husband, cross-petitions for a downward modification thereof. For the sake of convenience, the terms “ petitioner ” and “ respondent ” will be used despite the dual nature of these proceedings. Since the proofs to be elicited were similar, both petitions were heard at a joint trial.
As a result of a marriage which was apparently dead save for the pointed animosities still present after all the events to be described, the parties were divorced by decree of the First Civil Court of Juarez, Mexico, on May 25, 1970. An agreement executed just prior to this divorce on May 19, 1970 was incorporated therein by reference but survived the entry thereof. A comparison of these two dates and the fact that the parties remarried almost immediately lead one to the inescapable inference that the bags to Mexico were packed even while the finishing touches were being placed on the agreement.
The parties have three children from their first marriage whose support is the issue herein.
The husband immediately remarried and at this early date, already has one issue from this new liaison as well as the problems of a sick wife to add to his other burdens assumed by the separation agreement.
The former wife also has remarried and currently is not only a partner in a new relationship, but an intelligent, capable woman with teaching credentials who has taken a position as a permanent per diem substitute with the Board of Education earning a net of $47.50 per day.
The wife’s prima facie case was stipulated inasmuch as both parties rely on the same divorce decree. The husband’s *21 proof consisted of testimony as to a change of circumstances. A full schedule of his current expenditures was received in evidence on consent. It paints a sorry picture of a man overextended even prior to paying anything whatsoever for child support. On a total monthly basis, his expenses compute out to $1,002.50 as compared to his earnings of $928. He claims to make up the difference from loans from his new mother-in-law.
Certain changes in circumstances are immediately allowable. First, there is the fact that his earnings in 1970 of $1,100 per month included a monthly figure of $200 from a part-time job since surrendered, because it created out-of-proportion tax liability. In addition, his temporary rental of $30 for accommodations with his parents in 1970 has now increased to $170 for a three-room apartment.
Other changes in circumstances are not so clear cut and present threshold issues of law falling into three basic areas to be considered seriatim:
A) CIVIL ENFORCEMENT OF AGREEMENT ARREARS:
Obviously, with his new obligations, respondent’s payments under the decree trickled to a smattering of what they should have been. Petitioner, acting with diligence, has filed several successive lawsuits in the Civil Court under the agreement and has obtained a plethora of judgments on which she has caused garnishees to be issued, thus cutting down respondent’s available assets even more and having the cyclical effect of causing even more defaults in respondent’s payments.
Obviously, petitioner has every right to use the Civil Court for collection of arrears under the separation agreement. While this court has the right to modify the judgment of the Mexican court, that judgment which incorporated the agreement did not destroy its basic character as a quasi-commercial obligation, and having survived the entry thereof, can be enforced by plenary lawsuit, even should this court amend the judgment of divorce downward.
The net effect of this dichotomy of obligation is to create in a wife who is dissatisfied with the valid adjudication of a Family Court of competent jurisdiction the right, in effect, to overrule it by taking to the Civil Courts in proceedings based on the agreement; succeeding as she must; and reducing the husband to “ double liability” when a court of competent jurisdiction has ruled him incapable of sustaining even the original single liability.
*22 This practice of ‘ ‘ double liability ’ ’ though certainly legal, is oppressive; creates multiplicity of lawsuits; and allows a party whose rights and liabilities have been set to completely disregard the adjudication of a court which has heard the relevant issues and rendered a decision based on the current realities of a situation.
The court therefore holds that when any civil judgment for the differential between Family Court payments and agreed payments, pursuant to agreement, is being enforced, this court’s order shall be reduced by the amount of any garnishee, wage assignment or income execution then in effect.
Should the petitioner be disposed to levy execution on any judgment, that shall be her absolute right, but she must understand that if and when she does so, this court will entertain jurisdiction and grant a further downward modification in pursuance of its obligation to keep its order at a level conforming to the financial .situation of the parties.
B) ADMISSIBILITY OF EXPENSES FOB REMARRIED HUSBAND’S SECOND FAMILY:
The next consideration must be that of the weight to be given to respondent’s new obligations. A prevailing philosophy reflective of a society which still takes the obligations of marriage and parenthood seriously forms the basis of decisions which hold that liability to a first family is not diminished by a .remarriage and that a second family, regardless of need, must live on whatever is left after support for a first family has been paid. (Helman v. Helman, 190 Misc. 991.)
On the other hand, a softening of this attitude reflects views that remarriage is a worthy goal of civilized society and that new obligations incurred in good faith must also be met. (See “Benedict” v. “Benedict ”, 203 Misc. 286; Matter of Santa Clara v. Hughes, 43 Misc 2d 559, citing Krause v. Krause, 282 N. Y. 355.)
The court holds that the public harm resulting from the destruction of the second marriage by the continued economic strangulation of its breadwinner is far worse than a tempering of his obligations so that he may continue to work at full capacity with some incentive to meet these obligations.
It must be noted that while the court takes this stance, it will not countenance imprudent foolish spending for a new family at the expense of the old nor an uneven application of the father’s assets in a manner unduly penalizing his first family. As in every other situation known to the law, a rule of reason must prevail.
*23 0) mother’s earnings as affecting father’s liability for SUPPORT:
Finally, respondent asks the court to consider the fact that petitioner now earns a salary almost equal to his. Obviously, the primary statutory liability for support of children is in the father (Family Ct. Act, § 413). However, section 414 of the Family Court Act provides that if a father is dead or absent or incapable of supporting his child, the mother is chargeable with its support either in full or apportioned with the father. In Department of Welfare of City of N. Y. v. Siebel (6 N Y 2d 536) the Court of Appeals assessed support even against a stepmother at a time when the father was in fact making contribution for same and held that the word ‘ ‘ incapable ’ ’ as used in the statute refers not only to physical incapacity, but to insufficient earnings as well. A mother’s financial situation can be assessed by the court in considering the father’s liability for support. (Matter of Lewis v. Lewis, 5 A D 2d 674.) The mother’s assets have thus been considered.
Order : Upon all the evidence before the court, the judgment of the Mexican court is amended so that the respondent shall pay $50 per week for the support of the children only, apportioned in thirds. Arrears are set at $1,105 on consent. Since petitioner has a judgment for $250, the court further holds that if she elects to enforce same, the arrears shall be reduced by said amount and the weekly order of the court reduced by the amount of any garnishee. Arrears are held in abeyance. If respondent complies with this order without default for one year, the court shall consider cancellation thereof. This order shall be implemented by a payroll deduction order.
The court specifically disallows respondent’s expenses for a car which is unnecessary for his livelihood; for life insurance on which his second wife is the beneficiary; and for his new wife’s maid whom he expects to come in on funds taken from his three children.
Nothing herein contained shall be construed to limit, in any way, petitioner’s right to reduce to judgment any arrears under her separation agreement and to levy property execution upon such assets as she may locate such as will not destroy respondent’s livelihood or reduce his available weekly income. The court has simply held that where the overwhelming evidence points to a single fund by way of salary as the source of support, the diminution of this fund by the petitioner through acts in other courts will not be allowed without corresponding remedy for the respondent in this court.
*24 The petitioner is admonished that it is to her advantage to keep her former husband solvent so that he may continue his incentive to work to capacity to support his children. As soon as the realization sets in that support payments are not a penalty for hurt feelings • — regardless of how justified a penalty may be on a moral basis — that is when the remaining animosities can be conquered and these unpleasant events put behind the parties once and for all.