Hugh R. Elwyn, J.
This is an application pursuant to sections 461 and 466 of the Family Court Act for the modification of the support provisions of a New York State divorce decree which, in accordance with the provisions of a separation agreement between the parties, ordered the husband to pay the sum of $30 per week for the support of each of four children, upon the ground of a change in circumstances.
The change of circumstances relied upon to justify "a sought-for downward reduction in the husband’s support obligations, *276 to $20 per week per child, is his subsequent remarriage and the pregnancy of the second wife, who is expecting a child in November, 1973. Heretofore the petitioner’s second wife worked outside the home and he was then able to meet the payments directed by the court. He contends, however, that because there are no longer two wage earners in his household, it will be impossible for him to keep up the support payments previously ordered.
The petitioner’s proof shows that the parties were divorced by a decree of the Supreme Court on September 9, 1971 which, in accordance with the separation agreement between the parties, directed the husband to make support payments of $30 per week for each of four children. The petitioner remarried on April 1, 1972 and his second wife is now pregnant. She was formerly employed as a school teacher, but since she is expecting the birth of a child in early November, 1973 she is now on maternity leave.
The petitioner is a school principal with a salary for the school year of 1972-73 of $17,146. His salary for the 1973-74 school year will be $18,000, an increase of nearly $900. However, according to the petitioner, approximately one third of his gross income is -consumed by -State and Federal income taxes.
The petitioner’s monthly budget for the necessary household expenses of his second family totals $556, which, since it does not make any provision for medical care, home repairs and maintenance, auto repairs or even gasoline, purchase or cleaning of clothes, etc., is, he contends a ‘ ‘ bare bones budget ’ ’. He summarizes his financial condition as follows:
Gross Income 1972-73 ....................... $17,146.00
Deductions:
Social Security, Taxes, etc....... $5,735.00
Child Support (present) ......... 5,600.00
Total Deductions .................. 11,335.00
Net Income ................................. 5,811.00
Probable Refund on Income Tax.............. 1,000.00
Net available for support of petitioner and wife $ 6,811.00
The petitioner asks the court to take judicial notice of the fact that it is well nigh impossible for a man in his circumstances and station in life (a school principal) to support him *277 self, a wife and infant child on $6,811 a year or $567 per month. He further claims that his first wife is an able bodied healthy woman who should find work and help support their children. Equity and fairness, he contends, demand that he should have some respite from the burden of supporting his four children by the first marriage.
The respondent did not testify in opposition to the application, but did present ample proof through the testimony of her present husband that the children’s needs have not diminished, but have in fact increased. The respondent’s proof concerning the children’s needs is more than sufficient to support the order at the present level.
Thus there is squarely presented the crucial issue — whether the husband’s remarriage and the anticipated birth of a child of that marriage is a sufficient change in circumstances to justify a reduction in the level of support for the children of the first marriage where those children’s needs have not diminished nor the husband’s income decreased. The answers which the courts have given to this question are conflicting and have no doubt been influenced by the particular Judge’s view of the sanctity of the marriage contract, the responsibilities of parenthood and his assessment of the moral climate of his times.
A review of the Family Court decisions which have dealt with the question reveals a metamorphosis from the strict view that a husband’s liability is not diminished by any obligation he may incur as the result of a second marriage to the more liberal view that all persons having a claim upon the man’s earnings should share in fair proportions.
Hlustrative of the first point of view is Helman v. Helman (190 Misc. 991, 994), where the court said: ‘‘ Respondent’s remarriage and the second wife’s pregnancy do not relieve him of his duty to support the child of his first marriage nor upon the present record diminish the extent of such duty. The second wife married him at Heno, Nevada, with full knowledge of that child’s existence and of the Nevada court’s direction for its support.”
Insofar as the second wife is concerned, further expression of this point may be found in “ Benedict ” v. “ Benedict ” (203 Misc. 286, 294) wherein the court said: “ In arriving at today’s order no allowance may be made for respondent’s ‘ second wife ’ personally; in view of the adjudged invalidity of the Nevada divorce decree she has no legal claim on respondent. And even if there had been a lawful remarriage, she knew of *278 respondent’s prior support obligations, at least to the two children, and assumed that hazard.”
However, the court in “Benedict ” then proceeded to soften the harshness of its holding by saying (p. 294): “However, her pregnancy is a factor which should not be wholly disregarded, inasmuch as respondent does have legal as well as moral obligations for the safe delivery of the expected child and for its support after birth; and there is logical force in the view that the court should look at the entire situation realistically. (Cf. ‘Johnson’ v. 'Johnson’, 177 Misc 618, and cases cited, pp. 623-625.) ”
In “ Johnston ” v. “ Johnston ” (177 Misc. 618, 623) cited in Benedict the court acknowledged that “on the question of the extent to which the issue of the first marriage must suffer from the father’s assumption of new responsibilities by remarriage there is a surprising dearth of available authorities, and a conflict among them”.
After reviewing some of the authorities (e.g., Ryer v. Ryer, 33 Hun 116; Levy v. Levy, 149 App. Div. 561) holding that remarriage and the assumption of new obligations constitute no excuse for evading old ones and Baxter v. Baxter (256 App. Div. 892) holding that the granting of relief was discretionary, the court in “ Johnston ” concluded that, “ there is logical force in the view that the court should look at the situation realistically as it exists and, in a proper case direct that all parties who are entitled to support receive it in fair proportions. (Cf. Krause v. Krause, 282 N. Y. 355.) ”
Further support for this point of view is contained in “ Werner ” v. “ Werner ” (204 Misc. 1085, 1089) where the court said: “ There are authorities to the effect that a father’s remarriage should not affect adversely the support rights of the issue of his first marriage (cf. Phillipi v. Phillipi, 148 Fla. 393), and that any such children are in a sense first mortgagees of the father’s earnings or other resources. However, the better view appears to be that the court should look at the entire situation as it exists, and predicate every support order on the theory that all parties entitled to support should receive awards in fair proportions in the light of the particular circumstances (cf. Krause v. Krause, 282 N. Y. 355).”
Indeed, this court in Matter of Santa Clara v. Hughes (43 Misc 2d 559, 567) quoted the language of “ Werner ” v. “ Werner ” (supra) with approval and said: “Moreover, in determining the amount the respondent shall be required to pay for the support of his minor children, the court cannot *279 ignore the additional responsibilities which have come to the respondent as a result of his second marriage. In my judgment the respondent’s obligations toward those dependent upon him for support can be placed in proper perspective only if they are viewed as a whole.”
Finally, in a case remarkably similar to the present case in that it also involved an application on the part of a husband for a downward modification of the support provisions of a Mexican divorce decree which had incorporated by reference a separation agreement, the Family Court, Richmond County, in Matter of Jacqueline S. v. Gerald C. (70 Misc 2d 19) granted some relief to the husband. The court wrote (p. 22): “ The next consideration must be that of the weight to be given to respondent’s new obligations. A prevailing philosophy reflective of a society which still takes the obligations of marriage and parenthood seriously forms the basis of decisions which hold that liability to a first family is not diminished by a remarriage and that a second family, regardless of need, must live on whatever is left after support for a first family has been paid. (Helman v. Helman, 190 Misc. 991.)
‘ ‘ On the other hand, a softening of this attitude reflects views that remarriage is a worthy goal of civilized society and that new obligations incurred in good faith must also be met. (See ‘ Benedict ’ v. ‘ Benedict ’, 203 Misc. 286; Matter of Santa Clara v. Hughes, 43 Misc 2d 559, citing Krause v. Krause, 282 N. Y. 355.)
“ The court holds that the public harm resulting from the destruction of the second marriage by the continued economic strangulation of its breadwinner is far worse than a tempering of his obligations so that he may continue to work at full capacity with some incentive to meet those obligations.”
If this were a case where the court were being asked in the first instance to fix an amount which the husband should pay for the support of all of his children, whether born of the first marriage or the second, or even those of one or the other, the court would reaffirm the view it expressed in Matter of Santa Clara v. Hughes (43 Misc 2d 559, supra) and endeavor to fix the respondent’s obligation at a level which would provide support for each child in fair proportions. I would be inclined to view the situation as not fundamentally different than an intact family where by reason of the birth of a fifth child, the four first born would now have to share their father’s wealth and resources with the last born, and their proportionate shares *280 of the total available economic resources would now be divided into fifths instead of fourths.
However, in this case the husband contracted to pay his first wife the sum of $30 per week for each child, which agreement was confirmed by their divorce decree and subsequently by a consent order of this court. This is not a case of looking at the husband’s situation for the first time, when the court, in line with the views I expressed in Matter of Santa Clara v. Hughes (supra) should endeavor to deal equitably with all children having a claim on their father’s resources by looking at the situation as a whole, but rather the husband asks for the reduction by reason of a change in his circumstances which were wholly of his own making. If the wife were to bring suit on her separation agreement to obtain a judgment for arrears under the contract, the husband’s increased responsibilities resulting from his second marriage would not alter his obligation to pay the amount required by the contract (Lottridge v. Lottridge, 73 Misc 2d 614, 615).
The weight of authority is contrary to the holding of Matter of Jacqueline S. v. Gerald C. (70 Misc 2d 19, supra) and I am constrained, therefore, to reject the rationale of that case. The most recent appellate court decision dealing with issue presented by this case is Matter of Windwer v. Windwer (39 A D 2d 927, 928, app. dsmd. 31 N Y 2d 670) wherein the Appellate Division (2d Dept.) held that “ a divorced husband’s remarriage and a child born of his remarriage are not such circumstances as would warrant a reduction in support provisions, where the husband’s income remains unchanged.” Here the husband’s income has not remained unchanged, but has, in fact increased.
Earlier eases in the Appellate Division (2d Dept.) holding that a man’s remarriage with its attendant additional obligations is not such a change of circumstances as to justify a reduction of the amount of alimony are Goldberg v. Goldberg (265 App. Div. 946), Witkowski v. Witkowski (271 App. Div. 901, affd. 297 N. Y. 626), Raynor v. Raynor (279 App. Div. 670); compare Fennie v. Fennie (32 A D 2d 874 [4th Dept.]). To the same effect, see Stone v. Stone (44 N. Y. S. 2d 558, 564), Panarella v. Panarella (134 N. Y. S. 2d 440, 442), Fein v. Fein (136 N. Y. S. 2d 250, 251), Hardy v. Hardy (225 N. Y. S. 2d 565, 567), Balmer v. Balmer (12 Misc 2d 226, 227, mod. 7 A D 2d 741, affd. 7 N Y 2d 833), Matter of Zoro v. Lino (71 Misc 2d 725); compare “ Dominick ” v. “ Dominick ” (26 Misc 2d 344).
*281 Consequently, the facts of this case do not constitute such a change of circumstances as would warrant a reduction in the amount of support fixed by the divorce decree. Moreover, if it comes to a balancing of equities as the petitioner requests, it has been said that ‘' the equities in favor of the minor issue of the first marriage, as against a second wife or issue of a second marriage are normally greater than the equities in favor of a first wife” (Stone v. Stone, 44 N. Y. S. 2d 558, 564, supra). Here we are dealing with the matter of support for the children of the first marriage. The equities are in their favor.
The petitioner’s application for downward reduction in the support order is denied.