**Richard E. SPENCER, Plaintiff,**

v.

**Lorraine SPENCER et al., Defendants.**

**No. C–76–163–G.**

United States District Court,
M. D. North Carolina,
Greensboro Division.

April 29, 1977.

---

Janet L. Covey and William D. Caffrey, Greensboro, N. C., for plaintiff.

Norman B. Smith, Greensboro, N. C., for defendant, Lorraine Spencer.

Marcella Ann Reed, Asst. Atty. Gen., N. C. Dept. of Justice, Raleigh, N. C., for all other defendants.

Before CRAVEN, Circuit Judge, WARD, District Judge, and GORDON, Chief District Judge.

## OPINION OF THE COURT

GORDON, Chief Judge.

This three-judge court was convened to consider the claims of Richard E. Spencer that his constitutional rights were violated by the implementation of the North Carolina privy examination statute.[1] The plaintiff contends that he was denied the equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution inasmuch as the privy examination statute provided his wife with a private examination by a judicial officer to determine that the separation agreement entered into between the plaintiff and his wife was not unreasonable or injurious to the wife while, at the same time, the statute denied the plaintiff the same detached determination by a judicial officer as to the reasonableness of the separation agreement as it pertained to him.

On April 5, 1976, the plaintiff instituted this action, with a request that it be maintained as a class action, seeking injunctive

---

1. N.C.Gen.Stat. § 52–6. *Contracts of wife with husband affecting corpus or income of estate; authority, duties and qualifications of certifying officer; certain conveyances by married women of their separate property.*—(a) No contract between husband and wife made during their coverture shall be valid to affect or change any part of the real estate of the wife, or the accruing income thereof for a longer time than three years next ensuing the making of such contract, nor shall any separation agreement between husband and wife be valid for any purpose, unless such contract or separation agreement is in writing, and is acknowledged before a certifying officer who shall make a private examination of the wife according to the requirements formerly prevailing for conveyance of land.

(b) The certifying officer examining the wife shall incorporate in his certificate a statement of his conclusions and findings of fact as to whether or not said contract is unreasonable or injurious to the wife. The certificate of the officer shall be conclusive of the facts therein stated but may be impeached for fraud as other judgments may be.

(c) Such certifying officer must be a justice, judge, magistrate, clerk, assistant clerk or deputy clerk of the General Court of Justice or the equivalent or corresponding officers of the state, territory or foreign country where the acknowledgment and examination are made

and such officer must not be a party to the contract.

(d) This section shall not apply to any judgment of the superior court or other State court of competent jurisdiction, which, by reason of its being consented to by a husband and his wife, or their attorneys, may be construed to constitute a contract between such husband and wife.

(e) Any other provisions of this section to the contrary notwithstanding, in all cases where a married woman owning property as an individual joins with her husband in execution of a deed conveying her real property to a third party and said third party reconveys said real property to said wife and her husband as tenants by the entirety and in the deed to the third party the acknowledgment as herein provided was not complied with, but in all other respects the acknowledgment of the execution of said deed and the probate and registration thereof are regular, such conveyances shall not be void but shall be voidable only, and any action, the purpose of which is to have said conveyances set aside or declared invalid shall be commenced within seven years after the recordation of such deed in the office of the register of deeds of the county or counties in which said real property is located. If no such action is or has been brought then the effect of the conveyances shall be to create an estate by the entirety.

and declaratory relief from the enforcement of N.C.Gen.Stat. § 52–6; that the court declare the rights of the parties to the separation agreement, and further, that the court restrain the enforcement of the separation agreement against the plaintiff. Additionally, the plaintiff demanded that the court declare the separation agreement void or, in the alternative, require that he be given a privy examination prior to the enforcement of the separation agreement.

The plaintiff is an adult male who was married to the defendant Lorraine Spencer on September 12, 1942. Thereafter, the plaintiff and the defendant lived together as husband and wife until August of 1959, at which time they separated. On June 7, 1960, the plaintiff and the defendant Lorraine Spencer entered into a separation agreement which was executed in compliance with the provisions of N.C.Gen.Stat. § 52–6.

In accordance with the provisions of the statute, the defendant Lorraine Spencer was given a privy examination at the time the separation agreement was executed. An Assistant Clerk of the Superior Court of Guilford County, North Carolina, privately examined the plaintiff's wife concerning the execution of the separation agreement. The Assistant Clerk certified that the defendant stated that she signed the agreement freely and voluntarily, without fear and compulsion of her husband or any other person. The Clerk then certified that the agreement was not unreasonable or injurious to her.

No privy examination was given to the plaintiff Richard Spencer in connection with the execution of the separation agreement, and there was no certification by any officer of the court that such agreement was not unreasonable or injurious to him. The statute did not make provision for such an examination of the husband, nor were there any other statutory provisions requiring or permitting a privy examination for male persons.

The defendant Lorraine Spencer has on occasions threatened action in the State Courts of North Carolina presided over by the defendant Judges for enforcement of the provisions of the separation agreement executed without a privy examination for the plaintiff. Furthermore, the predecessors of the defendant Judges have, acting under color of state law, enforced the separation agreement against the plaintiff. Specifically, on May 25, 1962, judgment was rendered against the plaintiff in the Municipal County Court in the amount of $700.00, which sum represented the arrears in payments under the separation agreement as of that time.

This cause was originally set for oral argument on January 31, 1977. Fourteen days prior to the time of the original hearing date, the defendant Lorraine Spencer filed a motion to dismiss or stay of this action upon the grounds announced in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In this motion certain facts were first brought to the Court's attention which could have eliminated the necessity for much of the work already performed by the parties and the Court. In her motion, Lorraine Spencer set forth facts indicating that on April 6, 1976, the day following the commencement of this action, she filed an action against the plaintiff in the District Court Division of the Guilford County General Court of Justice. The allegations of the complaint in that action are identical to the allegations of the counterclaim in the case at bar; and the allegations of the counterclaim in the State case are virtually identical to the allegations of the complaint in this action.

From these facts the defendant Lorraine Spencer contends that she is entitled to a dismissal of this action on the relevant principles of equity, comity, and federalism enunciated in *Younger.*

A resolution of the serious constitutional questions presented in this case are unnecessary if this Court concludes that it would be inappropriate to hear and determine this matter. The pendency of a similar action in the state courts of North Carolina requires a resolution of the conflicting principles of equity, comity, and federalism with the maintenance of this federal action.

Since the beginning of this country's history, Congress has, subject to few exceptions, manifested a desire to permit state courts to try cases free from interference by federal courts. The precise reasons for this longstanding public policy against federal court interference with state court proceedings have never been specifically identified but the primary sources of the policy are plain. One is the basic doctrine of equity jurisprudence that courts of equity should not act when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief. *Younger, supra* at 43, 91 S.Ct. 746. In addition, general notions of comity, equity and federalism support the public policy against federal interference with state proceedings. This policy arises out of the courts' manifest desire to permit state courts to try cases free from interference by the federal courts.

These general notions of equity, comity and federalism, applied since the early days of our union of States and most recently in *Younger*, occupy a highly important place in our history and future. Their application should never be made to turn on such labels as "civil" or "criminal." Consequently, these principles apply equally to both civil and criminal actions pending in state courts. *Juidice v. Vail,* —— U.S. ——, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Lynch v. Snepp,* 472 F.2d 769, 773 (4th Cir. 1973).

It goes without saying that the principles of equity, comity and federalism have little force in the absence of a pending state proceeding. *Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). The seriousness of federal interference with state civil functions, particularly where the party to the federal case may fully litigate his claim before the state court, mandates that this Court not trivialize the principles of equity, comity and federalism by a strict adherence to the requirement that there must have been a pending state action *prior* to the date of the filing of the federal action. Therefore, where state proceedings are begun against the federal plaintiff after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger* and *Huffman* should apply with full force. *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975).

The principles enunciated above mandate that this Court should stay its hand in the resolution of this matter. Clearly, the state action was filed prior to the time any proceedings of substance on the merits had taken place in this Court inasmuch as the state action was filed just one day after the filing of this action. Moreover, it is also clear that the state action has been calendared for trial on several different occasions only to be continued at the insistence of the federal plaintiff. Therefore, there can be no question that the plaintiff will have a full and prompt hearing on the merits of his claim in the state courts.

In keeping with the letter and spirit of the *Younger* and *Huffman* decisions, this Court should not deny the courts of North Carolina the right to pass on the constitutionality of the statute. Moreover, even after this matter has been fully litigated in the state courts, the plaintiff will still have certain recourse for appeal within the federal system. 28 U.S.C. § 1257(2).

In addition to the reasons previously stated, the Court concludes that the plaintiff has failed to establish even a minimal showing that he will suffer immediate and irreparable harm sufficient to justify this Court interfering with a pending state proceeding. Moreover, the Court can perceive of no harm that will befall the plaintiff from pursuing his claims in the state courts. To allow this case to continue in this forum would result in the maintenance of two lawsuits involving the same parties, the same subject matter, and the duplication of much time and energy on the part of the Courts. Therefore, in order to avoid a useless conflict between this Court and the state court addressing the very same issues as presented in this action, the Court con-

cludes that the only appropriate action which can be taken at this time is the prompt dismissal of the plaintiff's action.

■ The Court denies the plaintiff's request for class action status in the maintenance of this suit. This ruling will in no way affect the rights of the other members of the purported class the plaintiff seeks to represent.

■ During the course of oral argument, counsel for the state defendants called the Court's attention to N.C.Gen.Stat. § 52–8.[2] At that time counsel and the Court observed that this statute might render the plaintiff's federal claims moot. Section 52–8, N.C.Gen.Stat., on its face, appears to validate all agreements entered into between January 1, 1931, and December 31, 1974, which were not executed in accordance with the provisions of N.C.Gen.Stat. § 52–8.

In view of the Court's prior holding that this matter should proceed in the state courts rather than in this forum, the Court will not launch into an extended exposition on this statute's effect upon this controversy. However, in light of the defendants' position that this statute moots the present controversy, the Court feels obliged to comment upon the state defendants' position concerning this statute.

It is the defendants' contention that, inasmuch as the statute purports to deprive the plaintiff's wife of the opportunity to have the agreement declared void on the grounds of noncompliance with the statute, that it would follow that the plaintiff cannot have the agreement voided, because to allow such a result would impose upon the plaintiff greater rights under the statute than were conferred upon the wife as a result of the operation of the statute. Accordingly, so the defendants' argument goes, any defect in the separation agree-

ment arising out of the operation of the privy examination statute has been cured by this particular piece of legislation.

The Court has examined the statute and the cases dealing with its application. The statute, by its express terms, deals only with contracts between a husband and wife which are "in all other respects regular." The only case law in North Carolina bearing upon the interpretation given to the above-quoted language appears in *Mansour v. Rabil,* 277 N.C. 364, 177 S.E.2d 849, 856 (1970), and *Boone v. Brown,* 11 N.C.App. 355, 181 S.E.2d 157, 159 (1971).

*Boone* involved a special proceeding to sell a house and lot on petition for partition. In *Boone* the wife's deed was not acknowledged in accordance with the provisions of N.C.Gen.Stat. § 52–6. No private examination of the wife was made as required by G.S. § 52–6(a); the certifying officer did not incorporate in her certificate a statement of her conclusions and findings of fact as to whether or not the deed was unreasonable or injurious to the wife as required by G.S. § 52–6(b); and the certifying official who took the wife's acknowledgement was a notary public and as such was not one of the officials authorized by G.S. § 52–6(c) to make the required certificate. The court held that G.S. § 52–8 was not applicable to this case. The court stated that, ". . . unless the requirements of that statute are complied with, such deed is void." *Boone, supra,* 181 S.E.2d at 158.

The Court in *Boone* commented that N.C. Gen.Stat. § 52–8 applies to only those contracts which are in all other respects regular. The failure of the wife to be privately examined and for the certifying officer to make appropriate findings of fact rendered the contract outside the language of the statute as being "in all other respects regular." Accordingly, the court determined that the defect in the wife's acknowledge-

---

**2.** N.C.Gen.Stat. § 52–8. *Validation of contracts between husband and wife where wife is not privately examined.*—Any contract between husband and wife coming within the provisions of G.S. 52–6 executed between January 1, 1930, and December 31, 1974, which does not comply with the requirement of a private examination

of the wife and which is in all other respects regular is hereby validated and confirmed to the same extent as if the examination of the wife had been separate and apart from the husband. This section shall not affect pending litigation.

ment was not cured by N.C.Gen.Stat. § 52–8.

In *Mansour* the North Carolina Supreme Court placed a similar construction upon the statutory language "in all other respects regular." The court stated that the failure of the certifying officer to make findings of fact concerning the agreement took the contract out of the provisions of the curative statute. Additionally, the court noted that N.C.Gen.Stat. § 52–8 had been enacted subsequent to the execution of the contract and the vesting of rights thereunder. Commenting on the effect of the curative statute on a fully executed contract the court observed, "[A] void contract cannot be validated by a subsequent act, and the legislature has no power to pass acts affecting vested rights." *Mansour, supra,* 177 S.E.2d at 857.

Accordingly, the Court observes that N.C. Gen.Stat. § 52–8 and the cases decided thereunder, do not appear to support the argument the defendants press upon this Court.

■ By way of summary, we hold that the pendency of an action in state court involving these same parties and issues present in this action precludes this Court from exercising its jurisdiction to determine the plaintiff's federal claims presented in his complaint.[3]

We hold on the facts of the case that this Court should abstain from hearing this cause. We request that counsel for the defendants prepare and submit to counsel for plaintiff an appropriate judgment to be submitted thereafter to the Court.

---

**3.** When the Constitution was adopted, the common understanding was that the domestic relations of husband and wife were matters reserved to the States. *Popovici v. Agler,* 280 U.S. 379, 383, 50 S.Ct. 154, 74 L.Ed. 489 (1930); *Ex parte Burrus,* 136 U.S. 586, 593, 594, 10 S.Ct. 850, 34 L.Ed. 500 (1890); *Simms v. Simms,* 175 U.S. 162, 167, 20 S.Ct. 58, 44 L.Ed. 115 (1899). Although this proposition does not control the disposition of suits involving substantial federal questions, it does serve to focus the Court's attention on the propriety of allowing state courts an opportunity to rule on the constitutionality of legislation governing the relations between married persons residing within the state.