Saul Moskoit, J.
The petitioner applies pursuant to subdivision (b) of section 461 and subdivision (c) of section 466 of the Family Court Act for an order modifying upward a Nevada divorce decree entered March 6, 1963 which incorporated by reference, but did not merge therein, a separation agreement entered into by the parties on January 1,1963. Petitioner bottoms her application upon the claim that the child is now 3 years and 7 months older (a claim which is summarily rejected by the court on the authority of Brody v. Brody, 19 N Y 2d 790, affg. 22 A D 2d 646); that his needs have increased; that he is now attending private school, needs psychiatric care: that extraordinary medical expenses have been incurred; that respondent’s income is now “ four times as reported in 1963 that respondent now holds an important- executive post in Overseas National Airways, Inc., and is now a stockholder in said company. She requests that respondent pay $35,000 annually for the support of herself and the child and seeks a modification of the visitation rights.
*3 Even a cursory examination of the separation agreement indicates that much negotiation preceded the final formulation of its terms and that its scriveners exercised painstaking efforts in reducing to writing the agreement of the parties. Each of the parties was represented by separate counsel both in the preparation of the agreement and the divorce that ensued.
The terms of the agreement quite clearly establish that the parties contemplated the possibility that respondent’s income would be enhanced with the passage of time and thus provided for a proportionate increase in support for the wife and child. They provided that until the husband’s or wife’s death or until the wife remarried after a divorce, the respondent would pay annually to the wife for her support and maintenance and that of the child the following percentages of his adjusted gross income during the preceding calendar year: 33%% of the first $15,000, plus 30% of the next $9,000, plus 25% of the next $12,000, plus 20% of the next $14,000. A limitation was placed on the amount to be provided for support in that the annual amount was not to be less than $5,000 nor more than $13,500 in any calendar year. In addition, the respondent agreed to pay all extraordinary hospital, surgical and dental expenses of the child which exceed 5% of the sum paid to the wife in any calendar year for support, it being further provided that the respondent will not be liable for extraordinary expenses incurred for orthodonture, surgery or psychiatric examinations or treatments to which he has not consented in advance except in emergencies.
The respondent was to have exclusive control of the child’s education and in addition to the payments provided, was to pay all charges for tuition, board, lodging and incidental expenses of the child at any school or college selected by respondent. The respondent reserved the right, to which petitioner agreed, to determine whether the child shall attend Summer camp, which camp and to pay all reasonable expenses in connection therewith.
It appears to the court from the terms of the agreement that the respondent had more than a casual interest in the welfare of the child and that this was recognized by the petitioner in providing the respondent with such broad discretion in controlling the child’s education, camping, psychiatric needs and in providing extremely liberal visitation privileges. The court finds that the respondent has taken the fullest advantage of such privileges and is obviously possessed of genuine concern and love for the child.
*4 The tax returns of the respondent for the years 1962 to 1966 inclusive reflect the following:

An increase in respondent’s annual salary for 1967 from $21,000 to $32,000 will result, in accordance with the terms of the agreement, in an increase of support to an amount in excess of $11,000 for the wife and child for the year 1967.
*5 As reflected in respondent’s Exhibit J, the income of respondent for each year from 1963 to 1966, inclusive, computed in accordance with the provisions of the separation agreement (including tax-exempt income and excluding capital gains and less business expense) was as follows 1963 — $20,820, 1964 — $19,599, 1965 —$17,009, 1966 —$37,483 —an average of $23,727. During this period, according to respondent’s Exhibit J, respondent claims to have paid to petitioner as and for her support and that of the child (including payments at request of petitioner for the account of petitioner and child, direct payments for child’s medical expenses and direct payments for child’s educational expenses) the following sums: 1963 — $11,-618, 1964 —$13,546, 1965 —$12,941 and 1966 —$12,557 —an average of $12,664.
Before reaching the question of whether the financial circumstances of the parties warrant a modification of the terms of the divorce decree, it becomes necessary to resolve several threshold questions of law.
A basic question is thrust upon the court by the amended answer of the respondent wherein he argues, in apparent reliance on Matter of Burns v. Burns (53 Misc 2d 484) decided April 3, 1967, that the Family Court is without jurisdiction to entertain an application to enforce or modify an out-of-State divorce decree and that subdivision (b) of section 461 and subdivision (c) of section 466 of the Family Court Act are unconstitutional in that they exceed the jurisdictional limits of the Family Court as set forth in the New York State Constitution (art. VI, § 13, subd. c).
With the utmost respect for its most distinguished colleague, Judge Hannah, this court does not concur in the rationale or principle enunciated in Burns (supra). It seems that in reaching the conclusion that subdivision c of section 13 of the New York State Constitution debars jurisdiction in this court with respect to enforcement or modification of an out-of-State decree, Judge Hannah completely overlooked the provisions of subdivision c of section 7 of article VI of the Constitution effective September 1, 1962, wherein it is provided: “ If the legislature shall create new classes of actions and proceedings, the supreme court shall have jurisdiction over such classes of actions and proceedings, but the legislature may provide that another court or other courts shall also have jurisdiction and that actions and proceedings of such classes may be originated in such other court or courts.” (Italics added.)
The changes in our statute authorizing enforcement or modification of out-of-State decrees were either coincidental with the *6 effective date of subdivision c of section 7 of article VI of the Constitution (§ 461, in 1962) or enacted thereafter (§ 466, in 1965).
There is no question that by its plain language subdivision c of section 7 of article VI is applicable to the present circumstances and would invest the Family Court with jurisdiction if enforcement or modification of out-of-State divorce decrees is a “ new class of action or proceeding ”. My learned colleague, in Burns (supra, p. 486), correctly stated that: “ Prior to 1962 neither the Domestic Relations Court nor the Children’s Court, the predecessor courts of this court, possessed the power to enforce any provisions of visitation or support of either the Supreme Court of New York or a foreign court of competent jurisdiction (Werner v. Werner, 204 Misc. 1085 [1953]). The Supreme Court does not have any statutory authority to modify an out-of-State decree [citing cases] ”.
“ The result was that prior to September 1,1962 the Domestic Relations Court and the Children’s Court exercised its independent jurisdiction by enforcing the primary obligation of the father by making support orders for children in amounts commensurate with the financial needs of the child and the earnings of the father where there were foreign divorce decrees (Werner v. Werner, 4 Misc 2d 1085). This was in effect an order superseding the support provisions of the divorce decree of the foreign court. It still offered no relief to the former wife, who was relegated to sue in a civil court for any arrears due under the order or decree or separation agreement (Domestic Relations Ct. Act, § 137). The legislature, recognizing the problem, sought to aid children by enacting section 461 and former wives by the amendment to section 466 of the Family Court Act; the object being to consolidate family problems of support in one court so that a former wife or former wife on behalf of a child could petition to enforce the provisions of a Netv York order or decree when the Supreme Court had not retained exclusive jurisdiction and in the case of a foreign decree to enforce or modify it upon the ground of changed conditions (Italics added.)
Up to this point, the rationale in Burns is completely valid. However, the error arises in Burns when the court places complete and exclusive reliance on subdivision c of section 13 of article VI of the Constitution for the jurisdiction of the Family Court and fails to consider subdivision c of section 7 of article. VI.
This court holds that subdivision (b) of section 461 and subdivision (c) of section 466 created a “new class of action *7 or proceeding ” and that accordingly the Legislature had constitutional authority under subdivision c of section 7 of article VI to vest the Family Court with jurisdiction over such class of action or proceeding.
The next question required to be resolved before examining the merits is the status of the petitioner to maintain this proceeding in her own behalf. The short answer may be found in McMains v. McMains (15 N Y 2d 283, 284-285 [1965]) wherein the Court of Appeals by Desmond, Ch. J. stated: “We hold that a separation agreement valid and adequate when made and which contains a nonmerger agreement continues to bind the parties when its terms as to support have been written into a subsequent divorce judgment but that this does not prevent a later modification increasing the alimony when it appears not merely that the former wife wants or by some standards should have more money but that she is actually unable to support herself on the amount heretofore allowed and is in actual danger of becoming a public charge.”
The court finds that the separation agreement was valid and adequate when made, that it contains a nonmerger agreement, and that the sum provided is adequate to provide for petitioner’s support, and finally that petitioner is not in actual danger of becoming a public charge.
On the facts and law, the petition is dismissed with respect to increased alimony for petitioner.
We come now to a consideration of whether or not the sum provided by the agreement is so improvident and inadequate with respect to the child or whether the child’s needs or respondent’s financial circumstances have so substantially changed as to warrant an upward modification for the child.
As already indicated, the fact that the child is now three years older is not sufficient cause, standing alone, for an upward modification (Brody, supra). The record does not establish a substantial change in the needs of the child, except possibly as to a controverted issue as to whether the child requires psychotherapy and even in this area, the agreement makes provision therefor if the respondent consents to such treatment in advance. This controversy as to whether the child is in need of psychotherapy, in the interests of the welfare of the child, must be resolved. The petitioner claims she has been advised that the child has such need; the respondent, on the other hand, contends that there is no need and that such treatment will be detrimental for the child. If the parties cannot reconcile their views, as they indeed should this court will do it for them. The child will be referred to the court psychiatric consultation service for a study *8 and report to the court as to whether there is a need for psychotherapy. If such need is indicated, the respondent will be required to pay the cost in accordance with the provisions of the agreement relating thereto.
As held by this court in Schwartz v. Schwartz (48 Misc 2d 859 [1965]), a support award for a child in a foreign divorce decree may be modified upward even in the absence of a showing of a change in the needs of a child if it is established that the father’s financial circumstances have so substantially changed so as to justify a court to require the father to support the child in accordance with his present means.
However, in the case at bar the parties themselves considered the possibility that respondent’s financial position might improve and accordingly provided for an escalation arrangement whereby the wife and child might enjoy the benefits of such enhancement of respondent’s financial status. The court finds this agreement to be adequate so as to provide for the reasonable needs of the child and not at all improvident.
Moreover, the court finds that the sum being paid by the respondent in the light of his present financial circumstances is fair and reasonable and adequate to provide for the child’s needs.
The application insofar as it seeks an increase in support for the child is denied.
The petitioner’s application to modify the decree and agreement with respect to visitation and Summer camp is denied. There is no proof in this record that the child’s welfare is in any wise being impaired by compliance with the agreement.
The court retains jurisdiction of this proceeding for the purpose of resolving the issue as to whether the child is in need of psychiatric therapy. The child is referred to the court psychiatric consultation service for report and advice as to whether child is in need of psychiatric therapy, as claimed by petitioner, or whether there is no such need and that such therapy may be detrimental to the child, as claimed by the respondent. The matter is set down for hearing on this issue only on September 27, 1967.
In view of the foregoing disposition, application for counsel fee is denied except that if it be determined that the child is in need of psychiatric therapy and respondent is directed to pay the cost thereof, in accordance with the terms of the agreement, counsel fee will be fixed at $500.