Emmett J. Schnepp, J.
This proceeding was instituted by petition verified November 1, 1965, to enforce the child support provisions of a Mexican divorce decree obtained by respondent, dated March 3, 1965, incorporating therein, without merging, a separation agreement dated January 11, 1965. Under such separation agreement respondent agreed to pay $30 weekly to the petitioner for the support of two children, issue of the marriage. The Mexican court is conceded to be a court of competent jurisdiction. In his answer respondent denies he has failed to comply with the decree and for an affirmative defense alleges that since 1963 the petitioner refused to permit respondent to exercise his visitation rights specified in the separation agreement, and that she violated a provision of the agreement requiring each party to encourage the children to honor and respect the other. Respondent requests that the payments under the Mexican decree be suspended pending petitioner’s compliance with the provisions in the separation agreement respecting visitation. Respondent moved at the hearing to dismiss the petition upon the ground that Family Court lacks jurisdiction to enforce the child support provisions of the Mexican decree. The disposition of this motion is considered at the outset.
To support his argument, respondent cites the case of Matter of Burns v. Burns (53 Misc 2d 484) decided in the Family Court, New York County, on April 3, 1967. There the court held that Family Court lacks jurisdiction to entertain a petition to enforce or modify the alimony provisions of a Mexican divorce decree and limits the jurisdiction of the court respecting child support to section 413 of the Family Court Act. The Appellate Division, Second Department, has also held that the Legislature was without power to endow Family Court with jurisdiction to enforce or modify the alimony or support provisions of foreign (Mexican) divorce decrees. (Matter of Seitz v. Drogheo, 28 A D 2d 892; Matter of Broderson v. Broderson, 28 A D 2d 867, both decided July, 1967.) It is pointed out that the Burns case was not followed by another Judge of the same court in Matter of Hinckley v. Hinckley (54 Misc 2d 1) decided on June 29, 1967. In any event these holdings are not controlling here, and this court is not compelled to follow the reasoning in these opinions.
Here the question relates to the jurisdiction of this court to enforce the child support provisions of the Mexican divorce *768 decree incorporating the separation agreement. Family Court has original jurisdiction in proceedings originated in Family Court 1‘ in the manner provided by law ’ ’ for the support of dependents, except where incidental to New York matrimonial actions and proceedings. (N. Y. Const., art. VI, § 13, subd. b, par. [4].) In implementing the constitutional directives, the Legislature made provision for child support proceedings under section 413 of the Family Court Act. In addition, it authorized Family Court to entertain applications to enforce or modify orders of the New York Supreme Court under certain conditions, and orders of other courts of competent jurisdiction requiring child support. .(Family Ct. Act, § 461, subd. [b]; § 466, subd. [c].) The Legislature was specifically empowered to enact laws to carry into effect the purposes and provisions of article VT of the Constitution and to implement, supplement or clarify any of its provisions, which might be necessary or desirable in promoting the objectives of this article, not inconsistent therewith. (N. Y. Const., art. VI, § 33.)
Every act of the Legislature must be presumed to be in harmony with the fundamental law, unless the contrary is clearly made to appear. (People ex rel. Simon v. Bradley, 207 N. Y. 592; Matter of McAneny v. Board of Estimate, 232 N. Y. 377.)
The limitation imposed by the Constitution is related to support incidental to New York matrimonial actions. Any act of the Legislature which would impinge upon this constitutional directive, without providing for a referral from Supreme Court, would be clearly inconsistent with the Constitution. Within the framework of the Constitution, however, there is no limitation on the number of classes of actions and proceedings that might be mandated to provide support of dependents. Not only did the Legislature provide for direct support proceedings, but also made provision for a class of proceeding related to the enforcement or modification of foreign divorce decrees. The action by the Legislature in providing the additional mode of child support proceedings under sections 461 and 466 of the Family Court Act did not limit or impair the jurisdiction of Supreme Court, which has only statutory powers with respect to matrimonial actions. (Langerman v. Langerman, 303 N. Y. 465.) The statutory powers granted to Supreme Court do not include jurisdiction to enforce or modify divorce decrees of foreign countries. (Domestic Relations Law, §§ 243-247; Boissevain v. Boissevain, 252 N. Y. 178.) Enforcement or modification proceedings of the character in question are not within the competence of Supreme Court to refer to Family Court. (N. Y. Const., art. VI, § 13, subd. c.) The Legislature was *769 empowered further to provide by law for the origination of new classes of actions or proceedings in courts other than Supreme Court. (N. Y. Const., art. VI, § 7, subd. c.) If it is held that the enforcement or modification of the child support provisions of foreign divorce decrees is a new class of action or proceeding, again the Legislature had the power to clothe Family Court with the jurisdiction thereof. (Lebedeff v. Lebedeff, 17 N Y 2d 557.) Accordingly the motion to dismiss the petition herein is denied, it being held that the act of the Legislature in according to Family Court the power to entertain an application to enforce the child support order of another court of competent jurisdiction requiring child support was a constitutional exercise of its power.
From the evidence it appears that the parties were separated in 1960 and that the 1965 separation agreement superseded a January, 1961 agreement. The respondent exercised visitation privileges with his son John, until the Spring of 1961, when the boy was almost seven years of age, and with his son Patrick until the fall of 1962, when this boy was five years of age. Thereafter the boys respectively refused to visit with respondent except on occasions such as Christmas, 1962. He testified with respect to John, that in the Fall of 1961 “he never bothered to pick up where he left off ’ ’. During this time however, he was visiting with Patrick. Under the 1965 separation agreement he had the right to visit the children ‘ ‘ at reasonable times ’ ’ and to have one or both of the boys ‘ ‘ on Sunday of each week upon notification ’ ’ to petitioner in advance. He had the right to have the children with him on Christmas, 1965, and alternately on certain holidays. While the evidence establishes much acrimony between the parties, his claim that the petitioner adversely influenced the children, and that over the years, despite his efforts and demands, his visitation privileges were denied by the petitioner is not established by the evidence. Although he made various telephone calls to petitioner during 1963 respecting his visitation privileges, there is no evidence that he physically sought to pick up the children at their home after they stopped seeing him, until after this proceeding was instituted. There is no evidence whatever, that from January 11, 1965 to December 18, 1965, the day after the first court hearing on the within petition, respondent ever sought to visit his children “at any reasonable time ” or that he gave any notice to petitioner in advance to have one or both of said children on a Sunday. He did go to their home twice during the 1965 Christmas season, but the children refused to go with him. The next endeavor he made to exercise any visitation right was near the end of *770 May, 1967 when he called to see his children without any prior notice. His son John then refused to go with him and both boys now have no wish or desire to exercise any visitation rights with respondent. It may be pointed out that an order of this court made on February 8, 1966 canceling* all arrears and support was reversed by the Appellate Division on or about April 6, 1967. (27 A D 2d 978.)
Respondent makes no demand at this time to enforce his rights of visitation and his present demand asserted in his answer by way of an affirmative defense is that the support payments be suspended, while he is unable to exercise such rights. It is not controverted that he has failed to make the support payments since September 11, 1965, except for two payments made after the within proceeding was instituted.
A bilateral decree of divorce obtained in Chihuahua, Mexico as a matter of comity offends no public policy of this State and must be recognized, (Rosenstiel v. Rosenstiel, 16 N Y 2d 64.) The child support provisions of a foreign divorce decree, incorporating a separation agreement, where it is claimed that the father’s right of visitation has been violated, must be complied with until modified, unless the support payments are expressly conditioned and dependent upon visitation. (Smith v. Smith, 255 App. Div. 652; Sterns v. Stevans, 11 A D 2d 726.) However, dependent covenants of support and visitation contained in a separation agreement are no longer dependent when incorporated into a foreign judgment. (Greene v. Greene, 31 Misc 2d 1009.) Although the foregoing rules have been applied to the decrees of sister States on the theory of “ full faith and credit ” the same reasoning must apply on “ comity ” principles to decrees of foreign countries.
Here respondent has made no application to modify the support provisions of the decree based on his alleged loss of visitation rights, unless his answer, in which he demands that the support payments be suspended while he is unable to exercise his visitation rights, be deemed an application to modify the divorce decree. If this is so, his application is denied there being no proof of change of circumstances subsequent to the entry of the decree. He exercised no visitation rights from the Fall of 1962 until the date of the decree, and none since then. The evidence reflects no change in the circumstances between the parties for some time before and after the decree. His proof if believed, would only reflect that petitioner adversely influenced the children over the years both before and after the date of the decree and the separation agreement incorporated therein. The affirmative defense set forth in his answer *771 is treated as a device to avoid the payments for child support specified in the decree. Here the support payments specified under the decree are not conditioned upon visitation rights and the support provisions accordingly must prevail, until the decree is modified. (Leifer v. Leifer 2 A D 2d 898.)
It is held here that the respondent is not relieved of the duty to pay support under the provisions of the divorce decree by reason of any claimed violation of his visitation rights set forth in the agreement and incorporated in such decree. Accordingly, it is held that this Mexican decree be enforced by this court and that the current support in the amount of $30 weekly be paid by respondent to the petitioner for the support of the two children, together with the sum of $2,780, which is treated as current support for the weeks subsequent to the filing of the petition herein and including the current week, less the two weeks respondent paid, plus the sum of $240 arrears under the Mexican decree for the weeks from September 13, 1965 to November 1, 1965.