**Leora WIESENFELD/Jennifer Wiesenfeld, an infant by her natural mother, Plaintiffs,**

v.

**The STATE of NEW YORK, the City of New York, Honorable Aileen H. Schwartz, Honorable Philip B. Thurston, Honorable Nanette Dembitz, Defendants.**

**No. 79 Civ. 0106.**

United States District Court, S. D. New York.

July 9, 1979.

Leora Wiesenfeld, pro se.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for the State of New York and for Defendant Judges Dembitz, Schwartz and Thurston; Robert J. Schack, Asst. Atty. Gen., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, Leora Wiesenfeld ("Leora"), is the second wife of Kalman Wiesenfeld ("Kalman"), and Jennifer, the co-plaintiff, is their infant child. They challenge the constitutionality of New York Family Court proceedings in which a support order against their husband and father was increased in favor of the child of his former marriage.

An order of the Family Court of the State of New York obligated Kalman to pay the sum of $35 per week for the support of the child of his first marriage. This award was increased to $60 per week on May 28, 1976, by which time he was married to plaintiff, Leora. Thereafter Kalman was substantially in arrears because contrary to the Court's direction he unilaterally decided to pay only the $35 fixed by the original award. · As a result, an application was made for a payroll deduction order.

At a hearing conducted on February 28, 1977[1] before a Family Court judge, Kalman, who appeared and opposed the application, was found in willful default for failure to pay the increased award of $60 per week; arrearages were determined to be $1,175. The judge entered an order directing the United States Treasury Department, Kalman's employer, to deduct from

---

1. At the time of the hearing, the child of the first marriage was seven years of age; the child of the second marriage was three years of age.

his salary $120 bi-weekly plus $10 for arrears, totaling $130 bi-weekly for the benefit and support of his dependent child by his first marriage. At that time, Kalman's gross salary was $22,000 a year and he received $555.90 net every two weeks[2] or a total annual payment of $14,453.40.

Leora commenced this action in January 1979 upon a claim that because she and the infant plaintiff were not parties to the Family Court proceedings which increased the weekly payment and directed the payroll deductions, they, as current dependents of Kalman, were deprived of due process of law. Essentially the claim is that the award entered by the Family Court directing the payment of $60 per week is excessive and beyond the ability of Kalman to pay and therefore deprives plaintiffs of their right to adequate support. Further, they allege that the Family Court disregards the needs of second families in fixing support awards and that this "preference" for former families is in derogation of plaintiffs' rights to the equal protection of the laws. Accordingly, they seek judgment that the payroll deduction order be vacated as null and void; that the original $35 per week payment be reinstated; and that punitive damages in the sum of $1,000,000 be awarded against the defendants, the State of New York, the City of New York and three Family Court judges who entered one or more of the support or payroll deduction orders. Plaintiffs who appear pro se, do not state the jurisdictional basis of the complaint but since violations of rights under the Constitution of the United States are alleged, it is assumed that the action is grounded upon 28 U.S.C., section 1343 and 42 U.S.C., section 1983.

The matter now before the Court is the motion by defendants to dismiss the complaint pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

## I

At the outset, a number of the defendants and certain of the claims for relief must be eliminated. The State is not a proper defendant because it is not a "person" under 42 U.S.C., section 1983.[3] Nor may the City, whose only nexus with the controversy is the mayoral appointment of Family Court judges, be retained as a party.[4] The defendant judges acted within their jurisdiction in increasing the support award and entering the payroll deduction order and are thus entitled to absolute immunity with respect to the claim for damages.[5] We are left therefore with the claims for declaratory and injunctive relief against the state court judges.[6] Defendants, however, raise two further hurdles to adjudication: (1) considerations of comity and federalism and (2) plaintiffs' standing to sue.

Defendants make the broad assertion that "plaintiffs must show that they raised each federal constitutional objection to a State matrimonial statute [and decisional law] in State court in order to have a

---

**2.** The net amounts received by him, in addition to withholding taxes, also reflected deductions for savings and life insurance.

**3.** *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Monroe v. Pape*, 365 U.S. 167, 187–92, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Bogard v. Cook*, 586 F.2d 399 (5th Cir. 1978); *Gras v. Stevens*, 415 F.Supp. 1148, 1150 (S.D.N.Y.1976) (three-judge court).

**4.** "*Respondeat superior* is not a doctrine that is applicable to § 1983 actions." *Arroyo v. Schaefer*, 548 F.2d 47, 51 (2d Cir. 1977); *Johnston v. Spriggs*, 77 F.R.D. 492, 495 (W.D.La. 1978); *see Morpurgo v. Board of Higher Educ.*, 423 F.Supp. 704, 713 (S.D.N.Y.1976).

**5.** *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872).

**6.** Judges are not immune from suits for declaratory or injunctive relief. *Heimbach v. Village of Lyons*, 597 F.2d 344, 347 (2d Cir. 1979); *Person v. Association of Bar of City of N. Y.*, 554 F.2d 534, 537 (2d Cir. 1977); *Erdmann v. Stevens*, 458 F.2d 1205, 1208 (2d Cir.), *cert. denied*, 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972). And § 1983 suits are excepted from the prohibitions of the anti-injunction statute, 28 U.S.C. § 2283. *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).

justiciable claim." [7]  Such is not the law.[8] As the Supreme Court stated in *Zablocki v. Redhail*,[9] in the absence of a pending state-court proceeding or of ambiguities in the statute for the state court to resolve, "this Court has uniformly held that individuals seeking relief under 42 U.S.C. § 1983 need not present their federal constitutional claims in state court before coming to a federal forum. . . . And there is, of course, no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy." [10]

▆▆▆ Considerations of comity and federalism do, however, limit the scope of inquiry when the issues arise out of a domestic relations dispute. Thus to the extent plaintiffs seek an adjudication that the support award is factually excessive, their request must be denied. To accept such a concept would constitute the federal courts as appellate reviewers of alimony and support awards. The fact and law determination by the state courts is not subject to review by the federal courts for they are not "the arbiter[s] of the correctness of every state decision," [11] particularly in actions that "verge on the matrimonial." [12] "There are many criteria to be considered in child support cases, . . . most of which are intimate to the parties and dependent upon the particular conditions existing in the area where the parties reside. State courts deal with these problems daily and have developed an expertise that should discourage the intervention of feder-

---

**7.** Memorandum of Law in Support of Motion to Dismiss at 3.

**8.** In the cases cited by defendants, the issues were either not ripe for adjudication, *Mendez v. Heller*, 530 F.2d 457 (2d Cir. 1976), or the federal plaintiff was a party to a pending state proceeding in which the constitutional claims could be raised, *Gras v. Stevens*, 415 F.Supp. 1148 (S.D.N.Y.1976) (three-judge court); *Kahn v. Shwainswit*, 414 F.Supp. 1064 (S.D.N.Y. 1976); *see also Moore v. Sims*, —— U.S. ——, 99 S.Ct. 2371, 60 L.Ed.2d 994, (1979); *Spencer v. Spencer*, 430 F.Supp. 683 (M.D.N.C.) (three-judge court), *app. dismissed*, 434 U.S. 807, 98 S.Ct. 39, 54 L.Ed.2d 66 (1977); *Gordils v. Maldonado*, 377 F.Supp. 1349 (D. P.R.1974). Plaintiffs were not parties to the Family Court proceedings and their right to intervene under N.Y.Civ.Prac. Law §§ 1012, 1013 (McKinney 1976) is unclear. *See Reurs v. Carlson*, 66 Misc.2d 968, 323 N.Y.S.2d 370 (Sup.Ct.1971) (denying intervention to second family). *See generally Trainor v. Hernandez*, 431 U.S. 434, 441, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (quoting *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973)) ("Dismissal of the federal suit 'naturally presupposes the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved.' ")

**9.** 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978).

**10.** *Id.* at 379–80 n.5, 98 S.Ct. at 678; *see Alsager v. District Court*, 518 F.2d 1160 (8th Cir. 1975) (termination of parental rights); *Halpern v. Austin*, 385 F.Supp. 1009 (N.D.Ga.1974) (due process challenge to garnishment of wages to satisfy alimony and child support obligations).

**11.** *Gill v. Gill*, 412 F.Supp. 1153, 1157 (E.D.Pa. 1976); *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Anderson v. Lecon Properties, Inc.*, 457 F.2d 929, 930 (8th Cir.), *cert. denied*, 409 U.S. 879, 92 S.Ct. 132, 34 L.Ed.2d 133 (1972); *cf. Alsager v. District Court*, 518 F.2d 1160, 1165 (8th Cir. 1975) (federal court confined to adjudicating those facts necessary to resolve the constitutional claim).

**12.** *Kamhi v. Cohen*, 512 F.2d 1051, 1056 (2d Cir. 1975); *see In re Burrus*, 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890) (dictum); *Barber v. Barber*, 62 U.S. (21 How.) 582, 16 L.Ed. 226 (1858). In *Hernstadt v. Hernstadt*, 373 F.2d 316, 318 (2d Cir. 1967), our Court of Appeals qualified its earlier ruling in *Southard v. Southard*, 305 F.2d 730 (2d Cir. 1962), that a pure constitutional question arising out of a domestic relations dispute may be considered by the lower federal courts, by stating that the *Southard* rule "clearly cannot be applied where the District Court could become enmeshed in factual disputes." *Compare Spencer v. Spencer*, 430 F.Supp. 683, 689 n.3 (M.D.N.C.) (three-judge court), *app. dismissed*, 434 U.S. 807, 98 S.Ct. 39, 54 L.Ed.2d 66 (1977) (traditional exception to jurisdiction for domestic matters, while not controlling in federal question case, focuses attention on the propriety of abstaining) *with Alsager v. District Court*, 518 F.2d 1160, 1165 (8th Cir. 1975) (federal court could not review propriety of termination of parental rights under Iowa standard, but it could "adjudicate those facts necessary to resolve the claim that the state standard is unconstitutional as written and as applied.")

al courts."[13] We are concerned solely, therefore, with the constitutional issues posed by plaintiffs' charge that in Family Court proceedings preference is given to the dependents of first families in the sums granted for their support so that the dependents of subsequent families are deprived of adequate levels of support.

On the question of standing, the proper focus is on whether the plaintiffs themselves have (1) suffered some threatened or actual injury in fact, economic or otherwise, (2) "resulting from the putatively illegal action."[14] That the harm alleged may have resulted indirectly from the imposition of "a governmental prohibition or restriction . . . on one party caus[ing] specific harm to a third party," does not in itself preclude standing.[15] The allegations of plaintiffs' complaint adequately meet this test. They, as well as the child of the first marriage, have rights to support under New York law enforceable against Kalman,[16] and the rights of all his dependents are necessarily limited by his financial means. To the extent that Kalman is required to pay for the support of the dependent of his first marriage, whether the award is deemed reasonable or excessive, the availability of funds to provide for his present family has been reduced accordingly. This reduced availability of funds has an impact of potential injury upon plaintiffs sufficient to establish that "personal stake in the outcome of the controversy" as to warrant the invocation of federal court jurisdiction.[17]

Moreover, contrary to defendants' assertion, this is not a third-party standing case,[18] for plaintiffs are not claiming that they were injured as the result of any abridgement of Kalman's constitutional

---

**13.** *Buechold v. Ortiz*, 401 F.2d 371, 373 (9th Cir. 1968); *see Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509, 516 (2d Cir. 1973); *Magaziner v. Montemuro*, 468 F.2d 782, 787 (3d Cir. 1972).

**14.** *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), *quoting Linda R. S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973); *see Massachusetts v. Mellon*, 262 U.S. 447, 488, 43 S.Ct. 597, 67 L.Ed. 1078 (1923); L. Tribe, American Constitutional Law §§ 3–19, 3–21 (1978).

**15.** *Warth v. Seldin*, 422 U.S. 490, 504–05, 95 S.Ct. at 2208 (1975); *see Truax v. Raich*, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915) (alien employee facing prospect of losing job entitled to challenge law prohibiting his employer from hiring more than a specified percentage of aliens).

**16.** *See, e. g.,* N.Y.Fam.Ct. Act §§ 412, 413 (McKinney 1975); N.Y.Dom.Rel.Law § 236 (McKinney 1977); *Krause v. Krause*, 282 N.Y. 355, 26 N.E.2d 290 (1940); *Gratt v. Gratt*, 202 Misc. 835, 116 N.Y.S.2d 380 (Sup.Ct.1952). That the wife is not a public charge and is living in the same abode as her husband does not deprive the Family Court of jurisdiction in support proceedings. *Dellaripa v. Dellaripa*, 62 A.D.2d 1036, 404 N.Y.S.2d 36 (2d Dep't 1978); *Pickering v. Pickering*, 58 A.D.2d 1039, 397 N.Y.S.2d 508 (4th Dep't 1977); *Austin v. Austin*, 282 App.Div. 493, 124 N.Y.S.2d 900 (1st Dep't 1953).

**17.** *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). *In Linda R. S. v. Richard D.*, 410 U.S. 614, 618, 93 S.Ct. 1146, 35 L.Ed.2d 356 (1973), the Supreme Court recognized the injury to plaintiff "stemming from the failure of her child's father to contribute support payments." Standing was denied, however, because the causal connection between the injury and the challenged official action (nonenforcement of criminal contempt sanctions) was lacking—that is the jailing of the father would not result in support of the child. Here, in contrast, prospective relief potentially would rectify the injury of which plaintiffs complain—that is, prevent the diminution of Mr. Wiesenfeld's available means to support them or, stating it otherwise, increase the amount available for their support.

**18.** In addition to the constitutional component of the standing inquiry (injury in fact), there are prudential considerations which limit the exercise of federal jurisdiction. L. Tribe, *supra* note 14, § 3–22, at 97–98, *citing Association of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) ("zone of interests" test); *see Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 39 n.19, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Flast v. Cohen*, 392 U.S. 83, 102, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) ("logical nexus"). The third-party standing cases present one manifestation of these prudential limitations. *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); L. Tribe, *supra*, §§ 3–23, 3–25; *see, e. g., Frothingham v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923).

rights.[19] There is no dispute that Kalman was accorded the requisite notice and opportunity to be heard in the support proceedings and in fact was heard; rather plaintiffs charge that their interests were not adequately heard or considered. Nor do plaintiffs challenge the division of child-support responsibilities between Kalman and his first wife as a denial of his right to the equal protection of the laws.[20] Rather plaintiffs challenge the alleged preferred treatment given the first family's claims to Kalman's assets as a denial of their rights to equal protection.

▮ In short, defendants' standing arguments are more properly addressed to plaintiffs' ability to sustain their legal claim, but "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal."[21] To these questions—whether under due process concepts plaintiffs have a cognizable property right to any particular level support of which they allegedly were deprived and whether under equal protection concepts the preference of which they complain, to the extent it exists if at all, is rationally related to legitimate state interests—we now turn.

## II

▮ Plaintiffs' due process claim centers on the alleged diminution of support resulting from the orders of the Family Court increasing Kalman's obligation to the child of his first marriage and garnishing his salary to satisfy the modified award. Although plaintiffs' support rights vis-a-vis Kalman were not extinguished, his available means for their support were allegedly diminished by the court orders. Assuming the truth of these allegations, the question remains whether the deprivation of which plaintiffs complain is within the purview of the Fourteenth Amendment thus giving rise to the procedural requirements of notice and an opportunity to be heard. In making that determination, we must consider state law as to the existence and dimensions of the asserted property right, for as the Supreme Court observed in *Board of Regents v. Roth*, "[p]roperty interests, of course, are not created by the Constitution."[22]

▮ Under sections 412 and 413 of the New York Family Court Act, Kalman is chargeable with the support of his wife and children and "if possessed of sufficient means or able to earn such means, may be required to pay for [their] support a fair and reasonable sum" as the court may determine.[23] As the statute's reference to the court's determination indicates, the right to support is inchoate until the aid of the court is sought. "The mere relationship of husband and wife does not give rise to a debt-or-creditor status."[24] Nor are the dimen-

**19.** *Compare McGowan v. Maryland*, 366 U.S. 420, 429, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *United States v. Raines*, 362 U.S. 17, 22, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960); *Tileston v. Ullman*, 318 U.S. 44, 46, 63 S.Ct. 493, 87 L.Ed. 603 (1943).

**20.** Portions of plaintiffs' affidavits on this motion do refer to the division of responsibility between Kalman and his former wife, citing *Carter v. Carter*, 58 A.D.2d 438, 397 N.Y.S.2d 88 (2d Dep't 1977). The complaint, however, does not refer to this ground and the remainder of the affidavits are consistent with the view expressed in the text. Thus, given the liberality with which *pro se* pleadings are viewed, *see Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam); *Cunningham v. Ward*, 546 F.2d 481, 482 (2d Cir. 1976), it is appropriate to disregard this reference in determining whether on any construction of the complaint plaintiffs have standing to raise their constitutional claims. *See*

*generally Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

**21.** *Warth v. Seldin*, 422 U.S. 409, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *accord, Association of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

**22.** 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *accord, Bishop v. Wood*, 426 U.S. 341, 344–47, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

**23.** N.Y.Fam.Ct. Act §§ 412, 413 (McKinney 1975).

**24.** *Eccles v. Hutchinson*, 28 Misc.2d 412, 414, 213 N.Y.S.2d 122, 124 (Sup.Ct.1961) (wife could not challenge husband's conveyance of home to daughter prior to divorce as fraudu-

sions of plaintiffs' asserted property rights fixed, for the level of support is tied to Kalman's financial means and thus will expand and contract with the size of his fortunes during the course of the marriage.[25]

Assuming that plaintiffs' rights are not so indeterminate as to negate the characteristics of "property" for all purposes,[26] it is nonetheless clear in the circumstances of this case that no property right was impaired. The ceiling to plaintiffs' rights in Kalman's income is, as noted, his financial means and in determining such the state courts consider his existing debts and obligations.[27] One such obligation is that owed to the child of his former marriage.

Plaintiffs are charged with knowledge of this obligation,[28] which continues until the child reaches the age of twenty one, is measured by the child's needs, and is subject to modification as those needs increase,[29] which it may be assumed will occur as the child grows older.[30]

We cannot say that the Family Court, in enforcing an obligation to which plaintiffs' rights were always subject and which necessarily has an impact upon the sum available for plaintiffs' support, deprived them of a cognizable property interest. Plaintiffs' assertion to the contrary assumes either that Kalman's support obligation to his first

lent); *see Kafalian v. Kafalian*, 27 Misc.2d 1065, 210 N.Y.S.2d 602 (Sup.Ct.1961) (arrears under support order do not make wife a creditor of husband); *cf. Liggio v. Liggio*, 53 A.D.2d 543, 385 N.Y.S.2d 33, 37 (1st Dep't 1976) (contractual rights under separation agreement); *Matthews v. Schusheim*, 36 Misc.2d 918, 235 N.Y.S.2d 973 (Sup.Ct.) (same), *rev'd on other grounds*, 18 A.D.2d 719, 236 N.Y.S.2d 407 (2d Dep't 1962), *app. dismissed*, 13 N.Y.2d 756, 242 N.Y.S.2d 60, 192 N.E.2d 28 (1963). Unlike other forms of debt, the existence and amount of ·support obligations are neither consensual nor fixed; they are imposed by statute and common law and are subject to adjustment in the discretion of the court based on the needs of the family and the financial means of the father. *McMains v. McMains*, 15 N.Y.2d 283, 288, 258 N.Y.S.2d 93, 98, 206 N.E.2d 185, 189 (1965); *Haas v. Haas*, 298 N.Y. 69, 71–72, 80 N.E.2d 337 (1948); *Goldman v. Goldman*, 282 N.Y. 296, 26 N.E.2d 265 (1940); *cf. Maynard v. Hill*, 125 U.S. 190, 211, 8 S.Ct. 723, 31 L.Ed. 654 (1888).

**25.** "When he is prosperous they prosper; when financial misfortune befalls him, the wife and family are also obliged to receive less." *Garlock v. Garlock*, 279 N.Y. 337, 340, 18 N.E.2d 521, 522 (1939); *see De Brauwere v. De Brauwere*, 203 N.Y. 460, 464–65, 96 N.E. 722 (1911); *Austin v. Austin*, 282 A.D. 493, 124 N.Y.S.2d 900, 901 (1st Dep't 1953). By statute, even a Family Court order is not res judicata or a vested right, but may be modified or vacated and any or all arrears cancelled. N.Y.Fam.Ct. Act §§ 451, 458 (McKinney 1975); *see Schaus v. Scott*, 90 Misc.2d 887, 396 N.Y.S.2d 570 (Fam.Ct.1977); *Jones v. Jones*, 51 Misc.2d 610, 273 N.Y.S.2d 661, 667 (Fam.Ct.1966).

**26.** *Compare Reurs v. Carlson*, 66 Misc.2d 968, 969, 323 N.Y.S.2d 370, 371 (Sup.Ct.1971) ("While it cannot be disputed that a decision against defendant [in action on separation

agreement brought by first wife] will affect his children [of second marriage], and might lower their standard of living, the question remains whether they have a sufficient interest in the 'property' of their father to warrant intervention. The Court thinks not.") *with United States v. Rye*, 550 F.2d 682, 684 (1st Cir. 1977) (former wife's right to alimony under Massachusetts divorce decree is "right to property" for purposes of federal tax lien).

**27.** *See, e. g., Boden v. Boden*, 42 N.Y.2d 210, 212, 397 N.Y.S.2d 701, 703, 366 N.E.2d 791, 793 (1977); *Bate v. Bate*, 62 A.D.2d 1068, 403 N.Y.S.2d 805 (3d Dep't 1978).

**28.** *See, e. g., K. v. K.*, 83 Misc.2d 911, 373 N.Y.S.2d 486, 495–96 (Fam.Ct.1975); *Benedict v. Benedict*, 203 Misc. 286, 115 N.Y.S.2d 352, 363 (Fam.Ct.1952).

**29.** N.Y.Fam.Ct. Act §§ 451, 461(a) (McKinney 1975); *see, e. g., K. v. K.*, 83 Misc.2d 911, 373 N.Y.S.2d 486, 491, 494–95 (Fam.Ct.1975); *Sullivan v. Sullivan*, 55 Misc.2d 691, 286 N.Y.S.2d 346, 349 (Fam.Ct.1966); *Stone v. Stone*, 44 N.Y.S.2d 558, 563 (Dom.Rel.Ct.1943); *cf. Halpern v. Austin*, 385 F.Supp. 1009, 1012 (N.D. Ga.1974) ("The ambulatory nature of a Georgia alimony judgment is a recognition that support is not the duty of a debtor arising in a commercial transaction but, rather, is a continuous obligation providing for the welfare of a former wife and children.")

**30.** *Malamat v. Malamat*, 264 App.Div. 795, 35 N.Y.S.2d 199 (2d Dep't 1942); *Werner v. Werner*, 204 Misc. 1085, 127 N.Y.S.2d 278, 284 (Dom.Rel.Ct.1953); *Stone v. Stone*, 44 N.Y.S.2d 558, 564 (Dom.Rel.Ct.1943); *but cf. Hinckley v. Hinckley*, 54 Misc.2d 1, 281 N.Y.S.2d 165, 172 (Fam.Ct.1967) (when a nonmerged separation agreement is involved, the mere fact that the child is three years older will not warrant an increase).

child is a static one or that plaintiffs' rights, at least in relation to the rights of the first child, were fixed on entry of the original $35 per week support order. Neither position is supported by the state law which defines their "property" interest and which is our reference point in determining the constitutional issues.

Moreover to uphold plaintiffs' position would require the courts to notify all subsequent dependents of every application for increased support and provide them with an opportunity to be heard in addition to that afforded the husband and father.[31] This would impose an intolerable burden on the Family Court system with little justification since it may be assumed that the husband's interests are largely coextensive with those of his present family and he will forcefully defend them,[32] as Kalman did in this case.[33] Plaintiffs' due process claim is therefore dismissed.

### III

■ Plaintiffs also challenge the increased child support award as violative of the Equal Protection Clause of the Fourteenth Amendment, upon a claim that the needs of former families and their rights to support are preferred over those of second families under New York law. The statutory sections imposing the duty of support,

quoted earlier, by their terms make no such distinction. Thus there can be no constitutional claim based upon the statute. While not clearly articulated, plaintiffs' claim appears to be that judges of the state courts, who under the statute determine the fair and reasonable amounts for the support of dependents, have given preference to children of a prior marriage to the detriment of those of a subsequent marriage.

■ It is true that at times Family Court judges, in determining fair and reasonable sums to be paid by a father for continuing support of a child by a prior marriage, have used the expression that "the issue of the prior marriage are in a sense first mortgagees upon the father's income."[34] But this "first mortgagee" concept in practice simply means that the courts do not regard the fact of remarriage as an ipse dixit to effect a reduction in an amount previously granted for the support of dependents of a prior marriage.[35] What is a fair and reasonable sum for the support of dependents according to one's means cannot be determined with the exactitude of a apothecary scale. There are legions of cases in the New York courts where applications for increase or decrease in support are made after the entry of original orders. These take into account the father's means, any increase or decrease in his income, and the number of dependents to be provided

---

**31.** The husband and father, is accorded notice, an opportunity to be heard, the right to counsel and the right to present witnesses in a support proceeding. N.Y.Fam.Ct. Act § 433 (McKinney 1975).

**32.** "It is obvious that the arguments to be advanced on behalf of [the husband and father] will almost certainly overlap those made on behalf of his [second family]." *Reurs v. Carlson*, 323 N.Y.S.2d 370, 371 (Sup.Ct.1971).

**33.** Indeed his objection to enforcement of the increased award and entry of the payroll deduction order was so vehement that the Court found his conduct was "contemptuous."

**34.** *Stone v. Stone*, 44 N.Y.S.2d 558, 564 (Dom. Rel.Ct.1943); *accord, Monfette v. Van Sickle*,

76 Misc.2d 275, 351 N.Y.S.2d 46, 49 (Fam.Ct. 1973); *Werner v. Werner*, 204 Misc. 1085, 127 N.Y.S.2d 278, 283 (Dom.Rel.Ct.1953); *Johnston v. Johnston*, 177 Misc. 618, 31 N.Y.S.2d 126, 132 (Dom.Rel.Ct.1941).

**35.** *Swartz v. Swartz*, 43 A.D.2d 1012, 349 N.Y. S.2d 1005 (4th Dep't 1974); *Windwer v. Windwer*, 39 A.D.2d 927, 333 N.Y.S.2d 205 (2d Dep't 1972), *aff'd*, 33 N.Y.2d 599, 347 N.Y.S.2d 458, 301 N.E.2d 440 (1973); *Monfette v. Van Sickle*, 76 Misc.2d 275, 351 N.Y.S.2d 46, 51 (Fam.Ct. 1973); *Zoro v. Lino*, 71 Misc.2d 725, 336 N.Y. S.2d 866, 869 (Fam.Ct.1972) (but court also denied first wife's request for upward modification); *Helman v. Helman*, 190 Misc. 991, 74 N.Y.S.2d 310, 314 (Dom.Rel.Ct.1947).

for.[36] These are variable factors.[37] In those instances when the courts are faced for the first time with the question of support for the prior family after the husband has remarried and assumed new obligations, the needs of all dependents are considered as a whole.[38]

To term the Family Court's attempt to arrive at an equitable adjustment of the needs and rights of all dependents a discriminatory classification in violation of the Equal Protection Clause would distort the concept. Courts of necessity draw distinctions all the time. Here the New York courts having a legitimate interest in "the sanctity of the marriage contract [and] the responsibilities of parenthood," [39] have simply determined that the fact of remarriage alone is insufficient justification to reduce the obligations of the father to the issue of the first marriage. This "distinction" is rationally related to the goal of ensuring that marital obligations are not "lightly undertaken and lightly discarded." [40] In light of the traditional deference accorded state regulation of the incidents and obligations of marriage,[41] we find no constitutional flaw in the balance the state courts have struck.

Defendant's motion to dismiss is granted.

So ordered.

**36.** *See, e. g., Lawrence R. v. Muriel R.*, 89 Misc.2d 666, 392 N.Y.S.2d 178, 180 (Fam.Ct. 1976); *S. v. C.*, 70 Misc.2d 19, 332 N.Y.S.2d 773, 776 (Fam.Ct.1972); *Goldberg v. Goldberg*, 58 Misc.2d 117, 294 N.Y.S.2d 773, 776 (Fam.Ct. 1968); *Medici v. Medici*, 53 Misc.2d 826, 279 N.Y.S.2d 910, 913 (Fam.Ct.1967); *County of Santa Clara v. Hughes*, 43 Misc.2d 559, 251 N.Y.S.2d 579, 588 (Fam.Ct.1964); *Werner v. Werner*, 204 Misc. 1085, 127 N.Y.S.2d 278, 283 (Dom.Rel.Ct.1953); *Stone v. Stone*, 44 N.Y.S.2d 558, 564 (Dom.Rel.Ct.1943); *Johnston v. Johnston*, 177 Misc. 618, 31 N.Y.S.2d 126, 133 (Dom. Rel.Ct.1941).

**37.** The weight accorded the various interests involved will vary with the equities of the case—distinctions are drawn between child support awards and alimony awards and between the interests of the second wife and of the children of the remarriage. *See, e. g., K. v. K.*, 83 Misc.2d 911, 373 N.Y.S.2d 486, 495–97 (Fam.Ct.1975); *Monfette v. Van Sickle*, 76 Misc.2d 275, 351 N.Y.S.2d 46, 51 (Fam.Ct. 1973); *Benedict v. Benedict*, 115 N.Y.S.2d 352, 363 (Dom.Rel.Ct.1952); *Stone v. Stone*, 44 N.Y. S.2d 558, 564 (Dom.Rel.Ct.1943).

**38.** *County of Santa Clara v. Hughes*, 43 Misc.2d 559, 251 N.Y.S.2d 579, 588 (Fam.Ct. 1964); *see Johnston v. Johnston*, 177 Misc. 618, 31 N.Y.S.2d 126, 133 (Dom.Rel.Ct.1941); *cf. Krause v. Krause*, 282 N.Y. 355, 26 N.E.2d 290 (1940) (in support proceeding by second wife, husband barred from raising defense of invalidity of divorce from first wife; needs of first wife considered in determining support obligations to second wife); *Gratt v. Gratt*, 202 Misc. 835, 116 N.Y.S.2d 380 (Sup.Ct.1952) (same).

**39.** *Monfette v. Van Sickle*, 76 Misc.2d 275, 351 N.Y.S.2d 46, 48 (Fam.Ct.1973); *see Krause v. Krause*, 282 N.Y. 355, 360, 26 N.E.2d 290, 292 (1940); *cf. Zablocki v. Redhail*, 434 U.S. 374, 389–90, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); *id.* at 393–94, 98 S.Ct. 673 (Stewart, J., concurring); *id.* at 400–02, 98 S.Ct. 673 (Powell J., concurring) (recognizing the legitimacy of State's interest in ensuring the fulfillment of child-support obligations).

**40.** *Krause v. Krause*, 282 N.Y. 355, 360, 26 N.E.2d 290, 292 (1940). No higher level of scrutiny is warranted since no suspect class is involved nor have fundamental rights been impaired. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 253, 94 S.Ct. 1676, 39 L.Ed.2d 306 (1974). Although the right "to marry, establish a home and bring up children" is a fundamental right, *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923); *see Zablocki v. Redhail*, 434 U.S. 374, 383–86, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978), when the impact of the challenged action on the exercise of that right is, as here, neither direct nor substantial, application of the strict scrutiny test is improper. *Id.* at 386, 98 S.Ct. 673; *Califano v. Jobst*, 434 U.S. 47, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977); *Mapes v. United States*, 576 F.2d 896, 900–01 (Ct.Cl.1978), *cert. denied*, 439 U.S. 1046, 99 S.Ct. 722, 58 L.Ed.2d 705 (1979).

**41.** *See Sosna v. Iowa*, 419 U.S. 393, 404, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975) (domestic relations is "an area that has long been regarded as a virtually exclusive province of the States"); *Maynard v. Hill*, 125 U.S. 190, 205, 8 S.Ct. 723, 31 L.Ed. 654 (1888).